**Thomas E. ZAREMBA, Individually and as a Partner, Appellant,**

v.

**Harvey Lavan CLIBURN, Jr., aka Van Cliburn Individually and as a Partner, Appellee.**

No. 2–96–238–CV.

Court of Appeals of Texas, Fort Worth.

July 17, 1997.

Rehearing Overruled Aug. 7, 1997.

---

**824**

Katherine A. Kinser, McCurley, Kinser, McCurley & Nelson, L.L.P., Dallas, for Appellant.

Dee J. Kelly, Kelly, Hart & Hallman, P.C., Fort Worth, for Appellee.

Before DAY, BRIGHAM and HOLMAN, JJ.

## OPINION

DAY, Justice.

Appellant Thomas E. Zaremba filed suit in the 360th Family District Court against appellee Harvey Lavan Cliburn, Jr., aka Van Cliburn for claims arising from a relationship between Zaremba and Cliburn. Those claims included:

- An accounting of partnership assets
- Appointment of a constructive trust
- Breach of contract
- Breach of fiduciary relationship and bad faith
- Mismanagement of partnership property
- An appointment of a receiver
- Fraud
- Quantum meruit and unjust enrichment
- Intentional infliction of emotional distress

Zaremba alleged that on or about July 14, 1966, he and Cliburn became close friends and sexual partners and in 1977, Cliburn asked him to move in with him. He further alleged that at the same time he moved in with Cliburn, he, either orally or impliedly, agreed to provide services like shopping, doing the mail, paying the bills, drafting checks, co-managing the household, and dealing with accountants, creditors, and real estate agents in exchange for a share in Cliburn's income. He contended that 17 years later, Cliburn dissolved their alleged partnership and he received no partnership assets or income.

The case was transferred to the 17th District Court of Tarrant County. Cliburn answered, generally denying the allegations and raising seven special exceptions:

1. Zaremba's petition failed to allege sufficient facts to state a claim for any cause of action based on an alleged partnership relationship because those actions must necessarily be based on an alleged partnership founded on an unwritten agreement concerning conjugal nonmarital cohabitation, unenforceable under the statute of frauds. *See* TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 1987).

2. All allegations in Zaremba's petition seek to recover community property that is only available to Texas spouses on dissolution of marriage, and Texas law does not recognize any marriage relationship other than heterosexual unions.

3. All references to an oral partnership agreement failed to state sufficient facts to support finding that a business partnership existed.

4. Statutes of limitations bar all of Zaremba's tort-related claims, to the extent they arose before April 29, 1994, and his contract-related claims, to the extent they arose before April 29, 1992, because the pleading alleges that Zaremba entered a partnership agreement with Cliburn in 1977 and was not compensated under that agreement.

5. Zaremba's breach of contract claim was indefinite and vague.

6. Zaremba failed to state factual bases to support his claims of quantum meruit and unjust enrichment because an expectation of reasonable compensation cannot be inferred when services are rendered to a person of the same household.

7. Allegations that Cliburn may have exposed Zaremba to Human Immunodeficiency Virus (HIV) were insufficient to support a cause of action for intentional infliction of emotional distress because Zaremba does not allege he has tested positive for HIV or that Cliburn has contracted HIV.

After a hearing on his special exceptions, Cliburn filed a motion for a "gag order." The trial court heard the gag order motion and entered an order regarding pretrial publicity. The trial court then entered a general order granting special exceptions one through seven. The next day, the trial court entered a final judgment dismissing Zaremba's lawsuit with prejudice because the pleading defects raised in Cliburn's special exceptions were such that could not be cured by amendment. In sixteen points of error, Zaremba appeals the trial court's rulings on Cliburn's special exceptions, its order on pretrial publicity, and its order of dismissal with prejudice, as follows:

- Points one, four, and six—the trial court erred as a matter of law by sustaining special exceptions one, two, and three because they were prohibited general demurrers.
- Points two and three—the trial court erred as a matter of law by sustaining special exception one because it retroactively applied the 1987 amendment to the statute of frauds and because the statute of frauds applies only to prohibit nonmarital conjugal cohabitation as consideration.
- Point five—the trial court erred by sustaining special exception two because Zaremba made no claim to recover community property.
- Point seven—the trial court erred by sustaining special exception three because it introduced extrinsic facts and thus is a prohibited speaking demurrer.
- Points eight and nine—the trial court erred by sustaining special exception four because the statute of limitations does not bar Zaremba's claims and the court should have used the date the parties entered into an agreement, which would have tolled the statute of limitations.
- Point ten—the trial court erred by sustaining special exception five because Zaremba's petition provided fair notice of his claim.
- Points eleven and twelve—the trial court erred by sustaining special exceptions six and seven because those exceptions fail to satisfy Texas Rule of Civil Procedure 91's particularity requirement.
- Point thirteen—the trial court erred by sustaining special exception seven because the trial court failed to correctly apply the law concerning the elements for an intentional infliction of emotional distress claim.
- Point fourteen—the trial court erred by sustaining special exceptions one through seven and dismissing the suit without giving Zaremba leave to amend his petition.
- Points fifteen and sixteen—the trial court erred as a matter of law by entering the order regarding pretrial publicity under Texas Rule of Civil Procedure 76a without sufficient evidence of findings to support its entry and without complying with any of that rule's procedural requirements.

Because we hold Zaremba's claims that allegedly arise from the purported oral or implied partnership agreement are founded on the basis that he was entitled to recovery for any services rendered in consideration of nonmarital, conjugal cohabitation, those claims are barred by the statute of frauds and that defect could not be cured by any amendment to the pleadings. Thus, we affirm the judgment of the trial court to the extent that it dismissed those claims with prejudice. With respect to the claim of intentional infliction of emotional distress based on allegations that Cliburn exposed Zaremba to HIV, we reverse and remand the trial court's judgment of dismissal to provide Zaremba an opportunity to attempt to amend his petition to properly state a claim.

### RECOVERY FOR SERVICES RENDERED IN CONSIDERATION OF NONMARITAL, CONJUGAL COHABITATION

We first consider points of error two and three. Zaremba argues that the trial court erred as a matter of law by sustaining special exception one because it applied the 1987 amendment to the statute of frauds retroactively. *See* Act of May 22, 1987, 70th Leg., R.S., ch. 551, § 1, 1987 Tex. Gen. Laws 2215, 2215 (codified at TEX. BUS. & COM.CODE ANN. § 26.01(b)(3) (Vernon 1987)) (effective Aug.

31, 1987). Further, he argues that the clause at issue in the statute of frauds applies only to prohibit nonmarital, conjugal cohabitation as consideration and that he does not allege that the purported agreement was for consideration of nonmarital, conjugal cohabitation. Specifically the statute of frauds provides:

> (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
>
> (1) in writing; and
>
> (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
>
> (b) Subsection (a) of this section applies to:
>
> . . . .
>
> (3) an agreement made on consideration of marriage or on consideration of nonmarital conjugal cohabitation. . . .

TEX. BUS. & COM.CODE ANN. § 26.01(a), (b)(3) (Vernon 1987).

The stated purpose of the 1987 amendment to the statute of frauds was ending the "abusive filing of palimony suits." *See* Tex. S.B. 281, 70th R.S. (1987) (captioned "An Act Restricting the Abusive Use of Palimony Suits"). In public hearings before the Senate Jurisprudence Committee, Senator Caperton, the bill sponsor, described palimony lawsuits as "an embarrassment to the legal profession." *See* Public Hearing on S.B. 281 Before the Senate Comm. on Jurisprudence, 70th Leg. R.S. (Mar. 3, 1987) (Text of hearing attached as Appendix to this opinion). He stated that the amendment would require "a deal . . . to live in a conjugal relationship . . . to be in writing" like an agreement made on consideration of marriage. *Id.* Essentially, he said, the amendment would prohibit "palimony suits [like those] that have been read about in other states." *Id.* Harry Tindall, chairman of the Family Law Section of the State Bar of Texas, testified as an individual supporting the legislation. He testified that promises made to induce someone to marry had to be written but promises made to induce someone to live with another need not be. *See id.* "With the number of people living together today, these lawsuits

are alive and well and they are usually grounded in the concept of breach of contract." *Id.* "Alfred Bloomingdale, Lee Marvin, Liberace, Billie Jean King, the litany is endless of people that have been involved in what I consider a strike suit . . . . [but][t]he[ ] claimants to [his] knowledge . . . never won" *Id.*

On the Senate floor, Senator Caperton stated that the amendment would "do away with palimony lawsuits." *See* Second and Third Floor Readings of S.B. 281 on the Floor of the Senate, 70th Leg., R.S. (Apr. 24, 1987) (Text of proceedings attached as appendix to this opinion). He stated, "I'm killing palimony," and "we won't have to worry about the Lee Marvin kind of lawsuits in Texas if this bill passes." *Id.* Before the House Committee on Business and Commerce, Tindall testified that promises made in consideration of nonmarital, conjugal relationships should be placed on an equal footing with promises made in consideration of marriage. *See* Public Hearing on S.B. 281 Before the House Comm. on Bus. & Commerce, 70th Leg., R.S. (May 11, 1987) (Text of proceedings attached as appendix to this opinion). By their nature, such promises are "not made as alleged." Such cases "create problems." "[T]hey are 9,999 times out of 10,000 a strike suit." And, the courts uniformly "rule for the defendants." *Id.* The Legislature's intent in amending the statute of frauds was plainly to stop palimony suits.

■ This is a "palimony" suit by nature. Zaremba first filed this suit in a Tarrant County Family Court. This shows that although Zaremba has raised his claims as arising from a purported oral or implied partnership agreement, he considered the suit a "family" matter. Zaremba claims that he and Cliburn became close friends and sexual partners over 30 years ago. Zaremba alleges that when Cliburn asked him to move in with him in 1977, he agreed to provide services like shopping, doing the mail, paying the bills, drafting checks, dealing with accountants, creditors and real estate agents, and co-managing the household in exchange for a share in Cliburn's income. However, pleading ancillary items of consideration does

not take the agreement outside the statute of frauds and render it enforceable. *See Lieber v. Mercantile Nat'l Bank at Dallas*, 331 S.W.2d 463, 471 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.). The performance of Zaremba's household services were collateral to a nonmarital, conjugal cohabitation agreement. Each claim put forth in Zaremba's petition as arising from a purported oral or implied partnership agreement is an attempt to disguise the palimonial nature of the suit and is, in actuality, founded on the principle that he was entitled to recover for alleged services rendered in consideration of nonmarital, conjugal cohabitation.

■ Texas courts have uniformly looked with disfavor on litigants seeking to bypass the statute of frauds by pleading other causes of action. *See, e.g., Barbouti v. Munden*, 866 S.W.2d 288, 293–95 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Keriotis v. Lombardo Rental Trust*, 607 S.W.2d 44, 46 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *cf. Texas Builders v. Keller*, 928 S.W.2d 479, 482 (Tex.1996). A plaintiff should not be permitted to do indirectly what is directly forbidden by statute. *Cf. Texas Builders*, 928 S.W.2d at 482. Moreover, the statute of frauds bars tort claims that are based on an alleged oral contract that is unenforceable under the statute of frauds. *See Maginn v. Norwest Mortgage*, 919 S.W.2d 164, 169 (Tex.App.—Austin 1996, no writ); *Collins v. Allied Pharmacy Management, Inc.*, 871 S.W.2d 929, 936 (Tex.App.—Houston [14th Dist.] 1994, no writ).

■ However, Zaremba argues that because the Legislature did not expressly make the amendment retroactive, it does not apply to his alleged agreement with Cliburn and thus does not bar his claims. Section 311.022 of the Texas Government Code provides that "[a] statute is presumed to be prospective in its operation unless expressly made retroactive." TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988); *see National Carloading Corp. v. Phoenix–El Paso Express*, 142 Tex. 141, 176 S.W.2d 564, 568 (1943), *cert. denied*, 322 U.S. 747, 64 S.Ct. 1156, 88 L.Ed. 1578 (1944); *Sims v. Adoption Alliance*, 922 S.W.2d 213, 216 (Tex.App.—San Antonio 1996, writ denied). Texas courts have not yet applied this

provision in a case, but a Minnesota court of appeals has construed a substantially similar statute, and we find its reasoning persuasive. *See Hollom v. Carey*, 343 N.W.2d 701 (Minn. Ct.App.1984). The Minnesota court applied its statute of frauds to bar oral palimonial agreements involving relationships that continued past the date of the statute's amendment. *See id.* at 704.

In the present case, Zaremba alleges that his relationship with Cliburn continued until 1994, seven years after the Legislature amended the statute of frauds. If Cliburn and Zaremba had intended this purported agreement to be enforced, they had seven years after the amendment of the statute of frauds to memorialize it in writing. In light of the Legislature's plain intent to "kill[ ] palimony," we conclude that section 26.01(b)(3) bars all unwritten palimonial agreements concerning relationships that continued past the amendment's effective date.

■ Thus, section 26.01(b)(3) bars Zaremba's claims for recovery under all causes of action that allege Zaremba was entitled to recover for services rendered in consideration of nonmarital, conjugal cohabitation, including his claims for equitable relief. We overrule points of error two and three. Zaremba's only remaining viable claim is his claim for intentional infliction of emotional distress.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ In point of error thirteen, Zaremba complains that the trial court erred by sustaining special exception seven because it failed to correctly apply the law on the elements of an intentional infliction of emotional distress claim. Zaremba alleged in his original petition that he suffered emotional distress "as a result of [Cliburn]'s exposing [him] to the HIV virus without any warning." Special exception seven asserted that Zaremba's allegations that Cliburn may have exposed Zaremba to HIV were insufficient to support a cause of action for intentional infliction of emotional distress because Zaremba did not allege he had tested positive for

HIV or that Cliburn had contracted HIV. Cliburn argues that emotional distress resulting from fear of contracting HIV, like similar claims for mental anguish damages, should be reasonably based on circumstances showing actual exposure to the disease causing agent. *See Drury v. Baptist Mem. Hosp. Sys.*, 933 S.W.2d 668, 674 (Tex.App.—San Antonio 1996, writ denied). Accordingly, he argues that such a claim must necessarily allege either that Zaremba had tested positive for HIV or that Cliburn had contracted HIV.

■ While it may be necessary to raise such allegations to allege conduct outrageous enough or emotional distress severe enough to make a claim for intentional infliction of emotional distress, the elements of the tort of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress was severe. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993).

Zaremba's pleading failed to state a claim because it failed to allege that Cliburn's actions were intentional or reckless and that his conduct was extreme and outrageous. Zaremba's pleading alleged that he suffered "severe mental anguish" "[a]s a direct and proximate result of [Cliburn]'s acts and willful *or* negligent disregard for [their] relationship." [Emphasis added.] Moreover, it alleged that the wrong was *"aggravated"* by "wilfulness and wantonness." It wholly failed to allege that Cliburn's conduct was extreme or outrageous. "[L]iability for outrageous conduct should be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman*, 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

■ Moreover, the pleading failed to specifically allege facts to determine whether Zaremba's emotional distress rose to the level of severity necessary to sustain a claim for intentional infliction of emotional distress. It

stated, "[Zaremba] has suffered emotional distress including but not limited to nervousness, distractibility, weight loss, difficulty sleeping, humiliation, disgrace, grief, sorrow and mental suffering." Emotional distress includes all highly unpleasant mental reactions such as fright, humiliation, embarrassment, anger, worry, and nausea. *See Behringer v. Behringer*, 884 S.W.2d 839, 844 (Tex.App.—Fort Worth 1994, writ denied) (citing *Qualicare v. Runnels*, 863 S.W.2d 220, 222 (Tex.App.—Eastland 1993, no writ) and RESTATEMENT (SECOND) OF TORTS § 46 cmt. j). However, the law intervenes only where the distress is so severe that no reasonable person should be expected to endure it. *See Behringer*, 884 S.W.2d at 844 (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. j). The intensity and duration of the distress are factors to be considered in determining its severity. *See id.* Moreover, often the extreme and outrageous character of the defendant's conduct is important in establishing that the distress existed. *See id.*

While Cliburn's special exception may not have stated precisely the reason why Zaremba's petition failed to state a claim for intentional infliction of emotional distress, the trial court properly ruled that Zaremba's petition failed to state the claim. The trial court entered a general order granting Cliburn's special exceptions. We assume that the trial court properly applied the law regarding the tort of intentional infliction of emotional distress. Accordingly, we hold the trial court properly sustained special exception seven because Zaremba failed to state a claim for intentional infliction of emotional distress. Therefore, we overrule point of error thirteen. Next, we consider whether the trial court properly dismissed Zaremba's claims without providing him an opportunity to remedy his pleading defects.

### AMENDMENT TO PLEADINGS

■ Zaremba complains in his fourteenth point of error that the trial court erred by sustaining Cliburn's special exceptions and dismissing the suit without giving Zaremba leave to amend his petition. Usually, a trial court may not dismiss a plaintiff's claim for pleading defects unless an opportunity is

first afforded to amend and cure the defect. *See Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974); *Humphreys v. Meadows*, 938 S.W.2d 750, 753 (Tex.App.—Fort Worth 1996, writ requested). However, when there is a defect in the pleadings that cannot be cured by an amendment, the trial court may dismiss claims without providing an opportunity to amend the defect. *See McAlister v. Medina Elec. Coop., Inc.*, 830 S.W.2d 659, 661 (Tex.App.—San Antonio 1992, writ denied); *Slentz v. American Airlines, Inc.*, 817 S.W.2d 366, 369 (Tex.App.—Austin 1991, writ denied); *see also Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 805 (Tex.1989).

 Claims purportedly arising from an oral contract within the statute of frauds are fatally flawed. Zaremba cannot amend his pleadings to cure this defect. However, we cannot hold that Zaremba would not be able to amend his pleadings to raise a claim for intentional infliction of emotional distress based on exposure to HIV. The trial court erred by dismissing this claim without affording Zaremba an opportunity to properly plead it.

Accordingly, we sustain point of error fourteen to the extent that it applies to special exception seven. Zaremba should have the opportunity to cure defects related to his claim for emotional distress arising from possible exposure to HIV. We overrule point of error fourteen to the extent that the statute of frauds precludes all his other claims, allegedly arising from the purported oral or implied partnership agreement that were, in fact, founded on the basis that he was entitled to recovery for any services rendered in consideration of nonmarital, conjugal cohabitation.

We need not consider Zaremba's remaining points of error.

### CONCLUSION

In summary, section 26.01(b)(3) bars all unwritten palimonial agreements concerning relationships that continued past the effective date of the amendment. Consequently, it bars Zaremba's claims for recovery under all causes of action that allege Zaremba was entitled to recover for services rendered in consideration of nonmarital, conjugal cohabitation, including his claims for equitable relief. Therefore, the trial court properly sustained special exception one. Additionally, the trial court properly sustained special exception seven because Zaremba failed to state a claim for intentional infliction of emotional distress, but Zaremba should have been afforded an opportunity to amend his claim for intentional infliction of emotional distress based on exposure to HIV. Therefore, the trial court erred in dismissing this claim. Claims arising from an oral contract within the statute of frauds are fatally flawed. Zaremba could not amend his pleadings to cure this defect. The trial court properly dismissed all Zaremba's other claims.

We affirm in part and reverse and remand in part.

### APPENDIX

TRANSCRIPTION OF THE PUBLIC HEARING
ON SENATE BILL 281 BEFORE THE SENATE'S
JURISPRUDENCE COMMITTEE HELD ON MARCH 3, 1987

CHAIRMAN, SENATOR CAPERTON: I am going to ask Senator Brown to take the Chair and recognize me.

SENATOR BROWN: Chair lays out Senate Bill 281 and recognizes the author, Senator Caperton.

SENATOR CAPERTON: Mr. Chairman, Texas currently, Texas law currently prohibits the enforcement of an agreement made on consideration of marriage unless the agreement is in writing and signed by the party charged with the obligation. That is basically part of the statute of frauds. However, the law does not cover similar arrangements arising out of nonmarital cohabitation. The lack of those restrictions has led in some extensive, in some cases, to palimony arrangements that have led to lawsuits being filed which, while not authorized under Texas law, are not so specifically prohibited that they are not frivolous, that they're not harassing, and in fact in the opinion of some,

are an embarrassment to the legal profession. What this bill does is to require that arrangements made on consideration of nonmarital agreements, in other words, if there is a deal, an agreement, to live in a conjugal relationship, that that has to be in writing too. It comes under the statute of frauds, essentially prohibiting the kind of palimony suits that have been read about in other states. It is, I believe, a recommendation of the Texas Family Law Council. We do have a witness from, a witness, Mr. Harry Tindall, who is a practitioner in Houston, Texas, and with the Chair's permission, I would like to call Mr. Tindall.

SENATOR BROWN: Are there any questions of the members of this author? I see non. I recognize Harry—

SENATOR CAPERTON: Hi, Harry.

WITNESS HARRY TINDALL: Hi. Thank you, Mr. Chairman. Pleasure to be here. Unfortunately there is in Texas law cases that recognize these types of promises and that's what's frightening. Out of the Houston Court of Appeals, we had *Harper v. Small,* we've had *Hayworth v. Williams* and others that recognize that these are the kinds of promises that are not covered by the statute of frauds and therefore, if I allege that I was promised a rose garden to go live with someone, I can enforce that promise in a court of law even though it is not reduced to writing and signed by the person made with the promise. If I allege that I was promised a rose garden to marry someone, I can't enforce that agreement and that seems to be an inexcusable enigma in the law and this would simply add those very few words to stop "on consideration of nonmarital conjugal cohabitation." With the number of people living together today, these lawsuits are alive and well and they are usually grounded in the concept of breach of contract.

*HARRY TINDALL,* the witness, states and answers as follows:

QUESTIONS BY SENATOR CAPERTON:

Q. Is this a recommendation of the Family Law Council?

A. No, it is not a recommendation of the Family Law Council. I do want to correct that on the record.

Q. It is a recommendation of Harry Tindall. Okay. Thank you.

A. Yes.

Q. Do you know of anybody opposed to the bill?

A. No, I do not.

Q. I don't have any other questions of Harry. I think, you know when the bill was first brought to me and we looked at my list of bills and I kept seeing, "palimony," I said, "Let's talk about that. I'm not sure I want to sponsor any such bill" and then I realized that it was moving in the other direction.

A. Well, now, as a lawyer I always, you mention about these are the kinds of lawsuits that you don't like. I certainly want to keep the courthouse open for anyone who's got a legitimate grievance. I don't wan to be hurt on that. But, when I read about Alfred Bloomingdale, Lee Marvin, Liberace, Billie Jean King, the litany is endless of people that have been involved in what I consider a strike suit. These claimants to my knowledge have never won, but those claims are around and they have to be litigated and fought to the trial on merits. And, you know, our statute of frauds has been very cautiously amended from the time that we adopted in 1840. We finally, and I researched it before today. We, in the '50's, added mineral leases to the statute of frauds. In the '70's, I believe, we added the promise, an alleged promise by a physician that he will cure you was added to the statute of frauds and it seems to me that this is the logical cautious addition to the statute of frauds.

QUESTIONS BY SENATOR BROWN:

Q. Harry, I can't think of the term now, but when you become married by living together—

A. Common law marriage—

Q. —common law marriage—

A. —would not be affected by this whatsoever.

Q. —in no any way affected. I guess the reason I am asking that it that, is that, is

that if a person, can—can a person, in order to try to defeat common law marriage, use the allegation of—of other agreement arrangements as evidence that they were not entering into a marriage and, and therefore it's not, I guess, it's not admissible.

A. Wouldn't be admissible if that—

QUESTIONS BY SENATOR CAPERTON:

Q. And the Family Code speaks to the arrangements, does it not?

A. That's right. If you are entering into a marriage and you want to alter your property, for example, those agreements have to be in writing.

Q. But if you are not entering into a marriage, you are living together, and one claims that it was a marriage, this will, this will be the measure to prove that you will have to have—

A. No.

Q. —that you will have to have an agreement to prove that it was a nonmarital arrangement, it it?

A. Oh—okay. If there's no marriage alleged, and it's a claim that we promise to live together and that we would have a certain arrangement, than it would have to be in writing. It is strictly in the nonmarital situation cause the marriage situation, either by common-law marriage or pre-marital contract or just under the statute of frauds, is already covered on every turn. It's the one gap that we fall through here and of course, these arrangements were relatively unheard of until the past ten years or so.

SENATOR CAPERTON: Exactly.

SENATOR BROWN: Are there any other questions of this witness?

WITNESS HARRY TINDALL: Thank you for your attention to this matter.

SENATOR CAPERTON: Harry, if you will just stay there, I don't think there is anybody else here that wants to be heard.

SENATOR BROWN: Which one do you want to—

SENATOR CAPERTON: I would like to lay out 282. I guess you ought to ask, Buster, if there is anybody—

SENATOR BROWN: Are there any other witnesses who care to testify in favor of or against Senate Bill 281? If not, then that will remain pending business?

SENATOR CAPERTON: Right.

Public Hearing on S.B. 281 Before the Senate Comm. on Jurisprudence, 70th Leg. R.S. (Mar. 3, 1987).

TRANSCRIPTION OF THE SECOND AND THIRD FLOOR READINGS OF SENATE
BILL 281 BEFORE THE SENATE ON APRIL 24, 1987

SENATOR CAPERTON: Mr. Chairman and Members, I move to suspend all necessary rules to take up and consider Senate Bill 281. Senate Bill 281, to those of you who supported the spousal maintenance bill, will give you, if you have gotten nervous about that vote, this will give you a balance to what and, because what this bill does is it requires an agreement in writing for any, it includes under the statute of frauds, any non-marital conjugal cohabitation. What this will do, in shorthand rendition, is do away with palimony lawsuits. So we're not going to have any—yes, sir—I'm killing palimony. That's right. And, it requires those agreements to be in writing. It expands, changes the statute of frauds, and we won't have to worry about the Lee Marvin kind of lawsuits in Texas it this bill passes.

CHAIR: Is there an objection to consideration of Senate Bill 281? You got this worked out without objections? Chair hears none, lays out Senate Bill 281 on second reading. Secretary, read the caption.

SECRETARY: Senate Bill 281 relating to palimony suits.

CHAIR: All in favor of engrossment say, "Aye."

SENATE: Aye.

CHAIR: Those opposed, "No." The ayes have it. Senate Bill 281 is engrossed. The Senator from Brazos moves to suspend the three-day rule. Secretary call the roll.

SECRETARY: (Secretary calls the roll.).

CHAIR: Thirty ayes. One no. The rule is suspended. Chair lays out Senate Bill—29 ayes and 1 no. The rule is suspended. Chair lays out Senate Bill on third reading and final passage. Secretary, read the caption.

SECRETARY: Senate Bill 281 relating to palimony suits.

CHAIR: All in favor of final passage, say, "Aye."

SENATE: Aye.

CHAIR: Those opposed "no." The ayes have it. Senate Bill 281 is finally passed. Second and Third Floor Readings of S.B. 281 on the Floor of the Senate, 70th Leg., R.S. (Apr. 24, 1987).

TRANSCRIPTION OF THE PUBLIC HEARING ON SENATE BILL 281 BEFORE THE HOUSE'S BUSINESS AND COMMERCE COMMITTEE HELD ON MAY 11, 1987

CHAIRMAN REPRESENTATIVE WOLENS: The Chair next recognizes Mr. Hackney on Senate Bill 281.

REPRESENTATIVE HACKNEY: Mr. Chairman and Members, this amends the, what's commonly referred to as the statute of frauds, by requiring that palimony agreements, or as the bill calls it, nonmarital conjugal cohabitation agreements be in writing before they are enforceable. I think we may have at least one witness who might want to expand on that.

REPRESENTATIVE: What? What? I'm sorry, I didn't—

CHAIRMAN WOLENS: That's okay. This is the palimony bill and it is Senate Bill 281.

REPRESENTATIVE: Now what is the intent Mr.—

REPRESENTATIVE: Say that again—

REPRESENTATIVE HACKNEY: This legislation requires, it adds to the statute of frauds palimony agreements, and palimony agreements are actually referred to here as an agreement made in consideration of nonmarital, conjugal cohabitation.

REPRESENTATIVE: I remember palimony. But what is nonmarital conjugal—just people living—

REPRESENTATIVE HACKNEY: That's if you have agreement, if you have an agreement on consideration of marriage, that's called generally a prenuptial agreement, and if you weren't married, but you have an agreement based on the fact you were going to have this conjugal cohabitation, then that should also be in writing just as the marriage agreement should be in writing.

REPRESENTATIVE: Otherwise—

CHAIRMAN WOLENS: Mr. Hackney, what is—

REPRESENTATIVE: You don't have no claim for palimony if you don't have—

REPRESENTATIVE HACKNEY: It's got to be in writing.

REPRESENTATIVE: Consideration of nonmarital, conjugal cohabitation.

REPRESENTATIVE HACKNEY: That's, that's correct. All we are saying is put it in writing. If it's got to be in writing based on marriage, it ought to be in writing based on cohabitation.

REPRESENTATIVE: Even if he leads you astray?

REPRESENTATIVE: What about workman's compensation?

REPRESENTATIVE HACKNEY: I'd like to call on Harry Tindall who could answer these tougher questions.

CHAIRMAN WOLENS: Thank you. Are there any other questions for Mr. Hackney? Mr. Tindall.

HARRY TINDALL: Yes.

CHAIRMAN WOLENS: Have you filled out—you certainly have. Mr. Tindall, if you would, please raise your right hand. Do you swear that the testimony that you are about to give before this committee is the truth, the whole truth, and nothing but the truth, so help you God?

HARRY TINDALL: I do.

## HARRY TINDALL

the witness being duly sworn, testified on his oath as follows:

QUESTIONS BY MR. WOLENS:

Q. If you would, please, for the record state your name, who you represent and proceed with your testimony.

A. Mr. Chairman, I am Harry Tindall from Houston, Texas. I represent myself. I am also Chairman of the Family Law Section, State Bar, but I'm here individually on this bill. We are all aware of the Lee Marvin palimony suit, of course. If you follow this litigation, we are also aware that Billy Jean King, Alfred Bloomingdale and others have all been sued. Liberace, before his death, was sued on these type of claims. To my knowledge, and I have spent a lot of time in this area, not a single claim of that type has ever been successfully tried. Yes, the Lee Marvin case established the so-called right to bring a palimony claims, but when it was tried, after considerable expense, the judge found no promise. Now, what we've done in Texas, and we recognize these claims under Texas law. There is one well known case out of Houston, *Harper v. Small,* that deals with this very problem. What this bill does is it simply adds about seven words to the statute of frauds and says that a promise, based on consideration of nonmarital, conjugal cohabitation must be in writing as any other promise. If I'm about to marry and I promise my prospective spouse a rose garden, it must be in writing upon marriage or it's unenforceable. That's very clear in the statute of frauds and—

REPRESENTATIVE: I can understand that.

A. (By Mr. Tindall:) But, if I promise someone I'm about to cohabit with a rose a garden, and it's not in writing, that is enforceable and that seems to be a real anomaly in the law. So, this would simply place on an equal footing, nonmarital conjugal relationships with those persons that marry based upon parol promises leading to the marriage. And that is the only change. Now, these cases are alive and well in Texas. They create problems. I think they are

9,999 time our to 10,000 a strike suit. They defy human nature that promises are not made as alleged, and uniformly, the courts almost, to my knowledge, rule for the defendants. So, that would be the narrow change made. I'll be happy to answer any questions.

CHAIRMAN WOLENS: Questions of Mr. Tindall?

HARRY TINDALL: I would add, parenthetically,—

CHAIRMAN WOLENS:—comments of Mr. Tindall—

HARRY TINDALL:—does not change the rules on common law marriages or any matters like that. Would not in any way tamper with that.

CHAIRMAN WOLENS: Questions of Mr. Tindall? Thank you, sir.

HARRY TINDALL: Thank you.

CHAIRMAN WOLENS: Mr. Hackney, you may call you next witness.

REPRESENTATIVE HACKNEY: I have no further witnesses, Mr. Chairman.

CHAIRMAN WOLENS: Thank you. Is there anyone who would like to testify for Senate Bill 281? There being non. Anyone who would like to testify against Senate Bill 281? There being none. Anyone who would like to testify on Senate Bill 281? There being none. Mr. Hackney to close.

Public Hearing on S.B. 281 Before the House Comm. On Bus. & Commerce, 70th Leg., R.S. (May 11, 1987).