Melissa Ann **KITCHEN**, Appellant,

v.

Steven Allen **FRUSHER**, Appellee.

No. 2–04–205–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 10, 2005.

Rehearing Overruled Dec. 1, 2005.

---

Brown, Dean, Wiseman, Liser, Proctor & Hart, L.L.P. and Billy R. McGill, Fort Worth, for Appellant.

Kelsoe, Anderson, Khoury & Clark and Jeffrey L. Clark, Dallas, Shannon, Gracey, Ratliff & Miller, L.L.P. and Joseph W. Spence, Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and McCOY, JJ.

## OPINION ON REHEARING

BOB McCOY, Justice.

On June 30, 2005, we issued an opinion reversing the trial court's judgment and remanding it for a new trial. Appellee subsequently filed a motion for rehearing. After reconsidering our opinion, we deny the motion for rehearing, withdraw our prior opinion and judgment, and substitute the following in their place.

### I. Introduction

Appellant Melissa Ann Kitchen appeals from a judgment rendered on a jury verdict whereby the jury failed to award her any remuneration for her work at a health club. In four issues, she complains that (1) an irreconcilable conflict exists in the answers to the first two jury questions wherein the jury found that she performed compensable work but valued the work at zero dollars, (2) the finding of zero value for her compensable work is against the great weight and preponderance of the evidence, or alternatively, (3) the zero finding is supported by no evidence, and (4) the jury finding of zero for the value of her attorney's fees is against the great weight and preponderance of the evidence. We will reverse and remand for a new trial.

### II. Factual Background

Kitchen met Appellee Steven Allen Frusher while working at a bar, moved in

with him in June 2000, and became engaged to him three months later. Kitchen and Frusher began discussing opening a Curves health club in Grapevine, Texas because he had experience managing health clubs in the 1980s and she wanted to get out of bartending and establish a career for herself. Frusher was acquainted with Curves because his sister works for Curves Franchise Sales and he is a friend of the founder and CEO of Curves International, Inc. Curves offers thirty-minute fitness workouts and weight loss and nutritional programs that cater to women who do not feel comfortable walking into a traditional health club facility.

Frusher purchased the franchise rights to a Curves using funds from his personal account and subsequently entered into a franchise agreement with Curves International, Inc. in April 2001. The signed franchise agreement for the health club was between Curves International, Inc. and Frusher. The club was located in a shopping center; the lease agreement was between Frusher and Park and 114 Joint Venture. Frusher obtained a $15,000 start up loan, which he used to renovate a portion of the leased space. Frusher alone was obligated on the note. Frusher also acquired an assumed name certificate for the franchise, which was also solely in his name. He testified that all of the original documents connected with the health club indicated that he was the sole owner of the business, that he had told Kitchen no part of the business would be in her name until they were married, and that she had no problem with that. Frusher testified that the reason for his caution was because Kitchen had been engaged on two prior occasions.

The health club opened in May 2001 with both Kitchen and Frusher participating in operating the business. Frusher handled much of the computer work, and Kitchen assisted training the women. Kitchen also paid bills, signed up new customers, trained new customers on equipment, hired part-time employees, was primarily in charge of customer service and customer relations, did marketing, advertising, and promotion work, and maintained the fitness equipment. After the first six months of operation, however, Kitchen worked at the club more than Frusher did, and according to Frusher's sister-in-law, Cheryl Frusher, Kitchen was the person who was primarily running the business on a daily basis.

Kitchen worked at Curves for two years. She testified that Frusher led her to believe that she was a co-owner of the business. Frusher ordered business cards for Curves that read "Melissa Kitchen and Steve Frusher, Owners." Frusher testified that he had these cards made because he and Kitchen were supposed to be married shortly after they opened the club and that he passed those business cards out to friends and people who might be interested in joining the club. Frusher also ordered a name tag that read "Melissa Kitchen, Owner," which she wore. During this time she received no salary, no paycheck, and no cash for working there, nor were social security or medicare taxes paid for her. However, both Kitchen and Frusher used the Curves bank account for their personal expenses. Frusher allowed Kitchen to write checks on and withdraw funds from the business account the entire time she worked at Curves, which she did; there was no monetary limit regarding what she could spend from the account.

Kitchen and Frusher had planned to be married in Las Vegas at a Curves convention in November 2001, but the wedding did not take place because they could not afford the trip and the time away from the business. No new wedding date was set. From October 2002 through June 2003,

Frusher was in Austin, Texas working on special effects for the movie "The Alamo." Kitchen ran the club on a daily basis while he was away. Frusher also had a few small projects in Dallas in addition to his movie work. Kitchen broke off their engagement in June 2003 after Frusher returned from Austin because they had "grown apart" and they had "personal issues." After the breakup, Frusher asked Kitchen to move out of his house, he removed her name from the bank accounts, and he changed the locks on the business, denying her access thereto. Frusher told her that the business was solely his and that she was entitled to nothing.

At the time of the breakup, the club had 191 members, according to Frusher, or around 300 members, according to Kitchen, and was generating around $10,000 a month in gross revenue. Kitchen testified that it was never her intention that the only benefit she would receive from working at Curves was to be able to use the bank account for personal expenses, and she thought that she and Frusher would share in the profits of the business as co-owners. Frusher, on the other hand, considered Kitchen to be an employee of Curves and believed her compensation was the use of the Curves bank account to pay her personal expenses.

### III. PROCEDURAL BACKGROUND

Kitchen filed suit against Frusher, alleging in her first amended petition that she was entitled to a declaratory judgment that the business was a partnership and that Frusher breached the agreement by excluding her from the business.[1] Alternatively, Kitchen alleged a claim for quantum meruit for the value of her services working at the club. At the time of trial,

Kitchen dropped her partnership claim and proceeded only on her quantum meruit claim.

In the charge of the court, the jury was asked three questions. In response to question one, "Did Melissa Ann Kitchen perform compensable work for Steven Allen Frusher with respect to the Curves business?," the jury answered "Yes." In response to question number two, "What is the reasonable value of such compensable work at the time and place it was performed?," the jury answered "$0.00," which is the same answer the jury gave to question number three inquiring about the reasonable value of attorney's fees for Kitchen's lawyer. Neither party objected to the jury verdict, the verdict was accepted, and the jury was discharged. Based upon the jury findings, the trial court entered a final judgment in favor of Frusher and against Kitchen. This appeal followed.

### IV. IRRECONCILABLE CONFLICT

In her first issue, Kitchen argues that there was an irreconcilable conflict between the answers to the first two jury questions. She asserts that one cannot reconcile the answer to question number one that she performed "compensable work," which was defined as having value, and then find that the "reasonable value of such compensable work" is zero, unless the jury took into account the value of her personal expenses paid from the Curves checking account that Kitchen argues was impermissible because "payment" was not pled as an affirmative defense. The trial court provided the following definition of "compensable work": "One party performs compensable work if valuable services are rendered for another party who knowingly

---

1. Frusher testified that only after Kitchen hired an attorney did he become aware that Kitchen was claiming that she was entitled to compensation exceeding her Curves account withdrawals.

accepts them and if the party accepting them should know that the performing party expects to be paid for the work."

Frusher initially responds that Kitchen failed to preserve error by not objecting to the conflicting answers prior to the jury's discharge. We agree. We specifically held in *Columbia Medical Center of Las Colinas v. Bush*, 122 S.W.3d 835 (Tex. App.-Fort Worth 2003, pet. denied), that a complaint of conflicting jury findings was not "preserved for our review because Appellants did not raise any contention concerning conflicting jury findings before the jury was discharged." *Id.* at 861; *see, e.g., Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 865 (Tex.App.-Corpus Christi 1999, pet. denied); *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 16 (Tex.App.-Corpus Christi 1993, writ denied). To the extent our holding on this issue in *First Texas Service Corp. v. McDonald*, 762 S.W.2d 935, 939–40 (Tex.App.-Fort Worth 1988, writ denied), is in conflict with our more recent decision in *Bush*, it is overruled.[2] Kitchen's first issue is likewise overruled.

## V. ZERO VALUE OF COMPENSABLE SERVICES

In her second and third issues, Kitchen argues that the finding of no value for her compensable work in response to question number two is "against the great weight and preponderance of the evidence so as to be manifestly unjust" and that "there was no evidence supporting the jury's finding."

### A. Legal Sufficiency[3]

#### 1. Standard of Review

A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005).

If a party is attacking the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). We first examine the record for evidence that supports the finding, while disregarding evidence to the contrary when reasonable to do so. *Dow Chem. Co.*, 46 S.W.3d at 241; *see also City of Keller*, 168 S.W.3d at 827. If there is no evidence to support the finding, we will then examine the entire record to determine if the contrary proposition is estab-

---

2. *See Torres v. Caterpillar, Inc.*, 928 S.W.2d 233, 244–45 (Tex.App.-San Antonio 1996, writ denied), and *Roling v. Alamo Group (USA), Inc.*, 840 S.W.2d 107, 110 (Tex.App.-Eastland 1992, writ denied), for a discussion of the *First Texas Service Corp.* holding.

3. When both legal and factual sufficiency challenges are raised on appeal, we must first examine the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

lished as a matter of law. *Dow Chem. Co.,* 46 S.W.3d at 241; *Sterner,* 767 S.W.2d at 690.

## 2. Evidence of Reasonable Value

■ After examining the record, we initially note that there is no evidence that Kitchen's compensable work had no reasonable value. We now examine the record to determine if a particular value for Kitchen's compensable work was established as a matter of law. *See Dow Chem. Co.,* 46 S.W.3d at 241; *Sterner,* 767 S.W.2d at 690.

The jury heard varying amounts of evidence regarding the reasonable value of the compensable work performed by Kitchen. Frusher testified that a reasonable annual rate of compensation for a full-time manager of Curves with responsibilities identical to Kitchen's would be $24,000 a year based on a good job performance. Kitchen testified that a reasonable hourly range for her services would be $12.00 per hour with time-and-a-half for work over forty hours per week. Heather Whitman, manager of the health club at the time of trial, earned $12.00 per hour in that position, and Frusher testified that she performed the same duties as Kitchen. Frusher testified that Kitchen worked twenty to twenty-five hours a week, but Kitchen testified that she worked fifty to fifty-five hours a week. A part-time employee, according to Frusher, was paid $8.00 per hour.

■ Despite the testimony above, the jury may have believed that the reasonable value of compensable work performed by Kitchen was not $8.00 per hour, $12.00 per hour, or $24,000 per year, but the amounts she withdrew from the Curves business account for personal expenses. This is because the jury heard repeated, unobjected to evidence that Kitchen's compensation for working at the health club consisted of

her access to the Curves business account. Kitchen testified on cross-examination as follows:

[Frusher's Counsel]: And what agreement did you and Mr. Frusher make about the compensation that you would receive relating to your working at the Curves business?

[Kitchen]: Relating to sharing in the profits.

[Frusher's Counsel]: Okay. And tell the ladies and gentleman of the jury what the terms of your agreement was.

[Kitchen]: I would pay our personal expenses and I would pay the business expenses out of that account.

. . . .

[Frusher's Counsel]: So how it worked is your compensation would be you would be able to take money out of the business account and pay for your personal expenses?

[Kitchen]: Yes.

Frusher testified,

[Kitchen's Counsel]: I know. But as you sit here today, did you consider her personal expenses her pay for managing Curves?

[Frusher]: Yes.

Frusher further testified as follows:

[Frusher's Counsel]: And tell the ladies and gentlemen of the jury what compen—what the terms of that compensation agreement was.

[Frusher]: She would basically run the club, and for her—for—her compensation would be that she would be able to withdraw money out of the bank account to pay for all her expenses.

[Frusher's Counsel]: And did you comply with that agreement that you made with Ms. Kitchen?

[Frusher]: Fully, yes.

Finally, Kitchen, again, testified as follows:

[Frusher's Counsel]: Let me ask you this way: Is it a true statement that at the time that the Curves business was opened in Grapevine that you and Mr. Frusher had an oral agreement about how you would be compensated?

[Kitchen]: I would have to say, yes, we did.

Thus, the jury may have considered the reasonable value of Kitchen's compensable work the amounts that she withdrew from the Curves business account pursuant to the alleged "arrangement" between her and Frusher.[4]

Our examination of the entire record thus demonstrates that the jury heard varying evidence regarding the value of Kitchen's compensable work but that no particular value was conclusively established as a matter of law.[5] *See Uniroyal Goodrich Tire Co.*, 977 S.W.2d at 334. Accordingly, because the evidence failed to establish a particular value for Kitchen's compensable work as a matter of law, her legal sufficiency challenge must fail. We overrule Kitchen's third issue.

**B. Factual Sufficiency**

■ In reviewing an issue asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242; *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ In accordance with the Texas Supreme Court's instruction, we will detail the evidence relevant to the issue in consideration and clearly state why the finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) (op. on reh'g); *see also Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 28 (Tex.1993).

---

**4.** The arrangement regarding Kitchen's use of the business account is *not* "payment" evidence and was *not* subject to the trial court's ruling granting Kitchen's motion to exclude. The trial court made it clear that its ruling "doesn't preclude [Frusher] from talking about what [his] arrangement is and the fact that [Kitchen] took money out." Indeed, Kitchen's counsel stated, "[W]e didn't get into amounts, and that's what my objection is to. If they start getting into amounts *to try to offset*, then that's what you have to plead payment for." (Emphasis added).

These statements also clarify the extent of the trial court's decision to exclude particular amounts of payment evidence. Plaintiff's Exhibit 2, the Curves bank records detailing the deposits and withdrawals made on the account from April 2001 through June 2003, was offered into evidence by Kitchen just before the trial court announced the names of the twelve individuals chosen to serve on the jury panel. Frusher offered no objection to the evidence, which the trial court admitted.

After Kitchen objected to Frusher's attempt to introduce alleged "payment" evidence, the trial court ultimately prohibited Frusher from admitting specific evidence of payment in order *to show an offset*. It did not prohibit the jury from considering Plaintiff's Exhibit 2 for other purposes, such as determining the amount of money Kitchen withdrew from the account.

**5.** Kitchen also does not assert that a particular sum of money has been conclusively established as a matter of law, which is fatal to her legal sufficiency argument. *See Ponce v. Sandoval*, 68 S.W.3d 799, 809 (Tex.App.-Amarillo 2001, no pet.) (holding that a challenge to the legal sufficiency of the evidence by a party with the burden of proof on the issue fails under the inquiry's second prong when movant "does not assert that a particular sum of money has been conclusively established by the evidence.").

In the instant case, the record demonstrates that while there is no conclusive evidence of a specific value for Kitchen's work, the evidence is uncontroverted that her work did have value. The evidence detailed above showed that the value of her work ranged from $8.00 per hour to $12.00 per hour, $24,000 per year, and the amounts withdrawn from the Curves business account reflected in the bank records. The evidence that Kitchen's work had a reasonable value thus overwhelmingly outweighs the jury's finding that her work had no value such that it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we hold that the evidence is factually insufficient to support the jury's zero value finding, and we sustain Kitchen's second issue. Therefore, having sustained her second issue, unless independent grounds exist for upholding the verdict, reversal is warranted.

## VI. INDEPENDENT GROUNDS FOR UPHOLDING THE JURY VERDICT

Frusher cites four reasons for upholding the jury verdict of zero value for Kitchen's compensable work that were contained in his motion for directed verdict presented at the close of the evidence, which was denied by the trial court.

A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent or (2) when the evidence is insufficient to raise a material fact issue. *See Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000); *Ray v. McFarland*, 97 S.W.3d 728, 730 (Tex.App.-Fort Worth 2003, no pet.); *see also* TEX.R. CIV. P. 268. In reviewing a directed verdict, we must view the evidence in the light most favorable to the party against whom the verdict was rendered. *Szczepanik v. First Southern Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994).

If the question to be decided is whether the losing party at trial raised a material fact issue, we limit our consideration to the evidence in that party's favor and discard all contrary evidence and inferences. *Id.* If we determine that any conflicting evidence of probative value raises a material fact issue on any theory of recovery, then the directed verdict is improper because such an issue is for the jury to resolve. *Id.* When reviewing a directed verdict on a legal issue, we consider all the evidence presented at trial, viewing it in the losing party's favor as much "as the record allows." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex.1996).

### A. Express Agreement

Frusher first asserts that if a plaintiff and defendant have an express agreement for payment of services, there cannot be a cause of action for quantum meruit as a matter of law. *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex.1995). Although we agree with this basic principle, it is inapplicable here because there is evidence that Kitchen and Frusher *did not* have an express agreement regarding payment. As we discussed above in section V.A.3, *supra*, Kitchen had access to the Curves business account and used the funds to pay for her personal expenses. This, however, was done with the understanding that she and Frusher were co-owners of the business and that they would share equally in the profits. She did not agree, as Frusher contended during trial and continues to argue on appeal, that she was to be compensated as an employee through her access to the business account. Thus, the evidence was sufficient to create a material

fact issue regarding the parties' agreement for Kitchen's payment of services. Accordingly, the trial court did not err by denying Frusher's motion for directed verdict on this ground. This additional ground for affirmance is overruled.

### B. Expectation of Payment

 Frusher next asserts that the evidence conclusively established· that he should not have known that Kitchen expected to be paid *additional money for her work at Curves above and beyond her expenses drawn from the health club bank account.* He points to that part of the instruction in question one discussing "compensable work," which states in part that "the party accepting them [valuable services] should know that the performing party expects to be paid for the work," which is consistent with element four of a quantum meruit claim.[6] Frusher appears to argue that because there is evidence "concerning the existence of an express agreement between Kitchen and Frusher regarding her compensation at work," he should not have known that Kitchen expected to be paid additional monies. However, as we discussed above, there is evidence that Kitchen and Frusher did not have an express agreement concerning compensation; evidence was presented demonstrating that the parties had two different understandings regarding payment, i.e. Kitchen did not expect compensation as an employee, but rather as an owner of the business. As such, the issue is not whether Frusher knew that Kitchen expected to be paid additional monies, but whether he knew that she expected to be paid at all. A directed verdict is improper if more than a scintilla of evidence exists,

that is, if there is a reasonable basis for a differing conclusion as to whether Frusher should have known Kitchen expected to be paid. *See Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 77 S.W.3d 253, 262 (Tex.2002). Because Frusher asserts that they had an agreement to pay her expenses from the club account, he obviously was on notice of her intent to be paid, in conformance with the requirements of the quantum meruit cause of action. Therefore, this additional ground for affirmance is overruled.

### C. Insufficient Evidence

 In his third ground, Frusher urges that there was legally insufficient evidence to submit the question of the value of the services to the jury. An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all the evidence in the case in making this determination, not just the evidence that supports the finding. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). As previously set forth in detail, there was ample evidence presented as to the reasonable value of Kitchen's services. This ground is overruled.

### D. Cohabitation

 Finally, Frusher asserts that the fact that persons are living in the same household creates a presumption that ser-

---

6. The elements of a quantum meruit claim are (1) valuable services and/or materials were furnished, (2) to the parties sought to be charged, (3) which were accepted by the parties sought to be charged, and (4) under circumstances that reasonably notified the recipient that the complaining party, in performing, expected to be paid by the recipient. *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992).

vices are gratuitous, citing *Coons–Andersen v. Andersen,* 104 S.W.3d 630, 637–38 (Tex.App.-Dallas 2003, no pet.), and *Zaremba v. Cliburn,* 949 S.W.2d 822, 825–26 (Tex.App.-Fort Worth 1997, writ denied). These cases involve household-related services, not running an outside business. Further, the *Coons–Anderson* case holds that "where persons are living together as one household, services performed for each other are presumed to be gratuitous, and an express contract for remuneration must be shown or that circumstances existed showing a reasonable and proper expectation that there would be compensation." *Coons–Andersen,* 104 S.W.3d at 638. As previously discussed, there is evidence that Kitchen had an expectation of remuneration. *Zaremba* is a palimony suit subject to the statute of frauds, and we find it inapplicable. 949 S.W.2d at 825–26. Therefore, this ground is also overruled.

### VII. Conclusion

In light of our holding sustaining Kitchen's second issue and our having overruled Frusher's independent grounds for affirmance, it is unnecessary for us to reach Kitchen's fourth issue. *See* Tex.R.App. P. 47.1. This cause is reversed and remanded for a new trial.