COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-04-205-CV

 

 

MELISSA ANN KITCHEN                                                       APPELLANT

 

                                                   V.

 

STEVEN ALLEN FRUSHER                                                        APPELLEE

 

                                              ------------

 

           FROM
THE 348TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION
ON REHEARING

 

                                              ------------

On June 30, 2005, we issued
an opinion reversing the trial court=s judgment and remanding it for a new trial.  Appellee subsequently filed a motion for
rehearing.  After reconsidering our
opinion, we deny the motion for rehearing, withdraw our prior opinion and
judgment, and substitute the following in their place.

 

 








I.  Introduction

Appellant Melissa Ann Kitchen
appeals from a judgment rendered on a jury verdict whereby the jury failed to
award her any remuneration for her work at a health club.  In four issues, she complains that (1) an
irreconcilable conflict exists in the answers to the first two jury questions
wherein the jury found that she performed compensable work but valued the work
at zero dollars, (2) the finding of zero value for her compensable work is
against the great weight and preponderance of the evidence, or alternatively,
(3) the zero finding is supported by no evidence, and (4) the jury finding of
zero for the value of her attorney=s fees is against the great weight and preponderance of the
evidence.  We will reverse and remand for
a new trial.

II.  Factual Background








Kitchen met Appellee Steven
Allen Frusher while working at a bar, moved in with him in June 2000, and
became engaged to him three months later. 
Kitchen and Frusher began discussing opening a Curves health club in
Grapevine, Texas because he had experience managing health clubs in the 1980s
and she wanted to get out of bartending and establish a career for
herself.  Frusher was acquainted with
Curves because his sister works for Curves Franchise Sales and he is a friend
of the founder and CEO of Curves International, Inc.  Curves offers thirty-minute fitness workouts
and weight loss and nutritional programs that cater to women who do not feel
comfortable walking into a traditional health club facility.

Frusher purchased the
franchise rights to a Curves using funds from his personal account and
subsequently entered into a franchise agreement with Curves International, Inc.
in April 2001.  The signed franchise
agreement for the health club was 
between Curves International, Inc. and Frusher.  The club was located in a shopping center;
the lease agreement was between Frusher and Park and 114 Joint Venture.  Frusher obtained a $15,000 start up loan,
which he used to renovate a portion of the leased space.  Frusher alone was obligated on the note.  Frusher also acquired an assumed name
certificate for the franchise, which was also solely in his name.  He testified that all of the original
documents connected with the health club indicated that he was the sole owner
of the business, that he had told Kitchen no part of the business would be in
her name until they were married, and that she had no problem with that.  Frusher testified that the reason for his
caution was because Kitchen had been engaged on two prior occasions.








The health club opened in May
2001 with both Kitchen and Frusher participating in operating the
business.  Frusher handled much of the
computer work, and Kitchen assisted training the women.  Kitchen also paid bills, signed up new
customers, trained new customers on equipment, hired part-time employees, was
primarily in charge of customer service and customer relations, did marketing,
advertising, and promotion work, and maintained the fitness equipment.  After the first six months of operation,
however, Kitchen worked at the club more than Frusher did, and according to
Frusher=s sister-in-law, Cheryl Frusher, Kitchen was the person who was
primarily running the business on a daily basis.

Kitchen worked at Curves for
two years.  She testified that Frusher
led her to believe that she was a co-owner of the business.  Frusher ordered business cards for Curves
that read AMelissa
Kitchen and Steve Frusher, Owners.@  Frusher testified that he had
these cards made because he and Kitchen were supposed to be married shortly
after they opened the club and that he passed those business cards out to
friends and people who might be interested in joining the club.  Frusher also ordered a name tag that read AMelissa Kitchen, Owner,@ which she wore.  During this
time she received no salary, no paycheck, and no cash for working there, nor
were social security or medicare taxes paid for her.  However, both Kitchen and Frusher used the
Curves bank account for their personal expenses.  Frusher allowed Kitchen to write checks on
and withdraw funds from the business account the entire time she worked at
Curves, which she did; there was no monetary limit regarding what she could
spend from the account.








Kitchen and Frusher had planned
to be married in Las Vegas at a Curves convention in November 2001, but the
wedding did not take place because they could not afford the trip and the time
away from the business.  No new wedding
date was set.  From October 2002 through
June 2003, Frusher was in Austin, Texas working on special effects for the
movie AThe Alamo.@  Kitchen ran the club on a daily basis while
he was away.  Frusher also had a few
small projects in Dallas in addition to his movie work.  Kitchen broke off their engagement in June
2003 after Frusher returned from Austin because they had Agrown apart@ and they
had Apersonal issues.@  After the breakup, Frusher asked Kitchen to
move out of his house, he removed her name from the bank accounts, and he
changed the locks on the business, denying her access thereto.  Frusher told her that the business was solely
his and that she was entitled to nothing.








At the time of the breakup,
the club had 191 members, according to Frusher, or around 300 members,
according to Kitchen, and was generating around $10,000 a month in gross
revenue.  Kitchen testified that it was
never her intention that the only benefit she would receive from working at
Curves was to be able to use the bank account for personal expenses, and she
thought that she and Frusher would share in the profits of the business as
co-owners. Frusher, on the other hand, considered Kitchen to be an employee of
Curves and believed her compensation was the use of the Curves bank account to
pay her personal expenses.

III.  Procedural Background

Kitchen filed suit against
Frusher, alleging in her first amended petition that she was entitled to a
declaratory judgment that the business was a partnership and that Frusher
breached the agreement by excluding her from the business.[1]
Alternatively, Kitchen alleged a claim for quantum meruit for the value of her
services working at the club.  At the
time of trial, Kitchen dropped her partnership claim and proceeded only on her
quantum meruit claim.








In the charge of the court,
the jury was asked three questions.  In
response to question one, ADid Melissa Ann Kitchen perform compensable work for Steven Allen
Frusher with respect to the Curves business?,@ the jury answered AYes.@  In response to question number two, AWhat is the reasonable value of such compensable work at the time and
place it was performed?,@ the jury answered
A$0.00,@ which is
the same answer the jury gave to question number three inquiring about the
reasonable value of attorney=s fees for Kitchen=s lawyer.  Neither party
objected to the jury verdict, the verdict was accepted, and the jury was
discharged.  Based upon the jury
findings, the trial court entered a final judgment in favor of Frusher and against
Kitchen.  This appeal followed.

IV.  Irreconcilable Conflict

In her first issue, Kitchen
argues that there was an irreconcilable conflict between the answers to the
first two jury questions.  She asserts
that one cannot reconcile the answer to question number one that she performed Acompensable work,@ which was defined as having value, and then find that the Areasonable value of such compensable work@ is zero, unless the jury took into account the value of her personal
expenses paid from the Curves checking account that Kitchen argues was
impermissible because Apayment@ was not pled as an affirmative defense.  The trial court provided the following
definition of Acompensable
work@: AOne party
performs compensable work if valuable services are rendered for another party
who knowingly accepts them and if the party accepting them should know that the
performing party expects to be paid for the work.@








Frusher initially responds
that Kitchen failed to preserve error by not objecting to the conflicting
answers prior to the jury=s
discharge.  We agree.  We specifically held in Columbia Medical
Center of Las Colinas v. Bush, 122 S.W.3d 835 (Tex. App.CFort Worth 2003, pet. denied), that a complaint of conflicting jury
findings was not Apreserved
for our review because Appellants did not raise any contention concerning
conflicting jury findings before the jury was discharged.@  Id. at 861; see,
e.g., Norwest Mortgage, Inc. v. Salinas, 999 S.W.2d 846, 865 (Tex.
App.CCorpus Christi 1999, pet. denied); Durkay v. Madco Oil Co., 862
S.W.2d 14, 16 (Tex. App.CCorpus
Christi 1993, writ denied).  To the
extent our holding on this issue in First Texas Service Corp. v. McDonald,
762 S.W.2d 935, 939-40 (Tex. App.CFort Worth 1988, writ denied), is in conflict with our more recent
decision in Bush, it is overruled.[2]  Kitchen=s first issue is likewise overruled.

V.  Zero Value of Compensable Services

In her second and third
issues, Kitchen argues that the finding of no value for her compensable work in
response to question number two is Aagainst the great weight and preponderance of the evidence so as to be
manifestly unjust@ and that Athere was no evidence supporting the jury=s finding.@

 








A.  Legal Sufficiency[3]

1.  Standard of Review

A legal sufficiency challenge may only be sustained
when:  (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362-63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).








If a party is attacking the legal sufficiency of an adverse
finding on an issue on which the party had the burden of proof, she must
demonstrate on appeal that the evidence establishes, as a matter of law, all
vital facts in support of the issue. 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).  We first examine the record
for evidence that supports the finding, while disregarding evidence to the
contrary when reasonable to do so.  Dow
Chem. Co., 46 S.W.3d at 241; see also City of Keller, 168 S.W.3d at
827.  If there is no evidence to support the
finding, we will then examine the entire record to determine if the contrary
proposition is established as a matter of law. 
Dow Chem. Co., 46 S.W.3d at 241; Sterner, 767 S.W.2d at 690.

2.  Evidence of
Reasonable Value

After examining the record, we initially note that there is
no evidence that Kitchen=s compensable work had no reasonable
value.  We now examine the record to
determine if a particular value for Kitchen=s compensable work
was established as a matter of law.  See
Dow Chem. Co., 46 S.W.3d at 241; Sterner, 767 S.W.2d at 690. 








The jury heard varying
amounts of evidence regarding the reasonable value of the compensable work
performed by Kitchen.  Frusher testified
that a reasonable annual rate of compensation for a full-time manager of Curves
with responsibilities identical to Kitchen=s would be $24,000
a year based on a good job performance. 
Kitchen testified that a reasonable hourly range for her services would
be $12.00 per hour with time-and-a-half for work over forty hours per week.  Heather Whitman, manager of the health club
at the time of trial, earned $12.00 per hour in that position, and Frusher
testified that she performed the same duties as Kitchen.  Frusher testified that Kitchen worked twenty
to twenty-five hours a week, but Kitchen testified that she worked fifty to
fifty-five hours a week.  A part-time
employee, according to Frusher, was paid $8.00 per hour.

Despite the testimony above, the jury may have believed
that the reasonable value of compensable work performed by Kitchen was not
$8.00 per hour, $12.00 per hour, or $24,000 per year, but the amounts she
withdrew from the Curves business account for personal expenses.  This is because the jury heard
repeated, unobjected to evidence that Kitchen=s compensation for working at the health club consisted of her access
to the Curves business account.  Kitchen
testified on cross-examination as follows:

[Frusher=s
Counsel]: And what agreement did you and Mr. Frusher make about the
compensation that you would receive relating to your working at the Curves
business?

 

[Kitchen]: Relating to
sharing in the profits.

[Frusher=s
Counsel]: Okay.  And tell the ladies and
gentleman of the jury what the terms of your agreement was.

 

[Kitchen]:
I would pay our personal expenses and I would pay the business expenses out of
that account.








. . . .

[Frusher=s
Counsel]: So how it worked is your compensation would be you would be able to
take money out of the business account and pay for your personal expenses?

 

[Kitchen]: Yes.

Frusher testified,

[Kitchen=s
Counsel]: I know. But as you sit here today, did you consider her personal
expenses her pay for managing Curves?

 

[Frusher]: Yes.  

Frusher further testified as follows:

[Frusher=s
Counsel]: And tell the ladies and gentlemen of the jury what compen -- what the
terms of that compensation agreement was.

 

[Frusher]:
She would basically run the club, and for her -- for -- her compensation would
be that she would be able to withdraw money out of the bank account to pay for
all her expenses.

 

[Frusher=s
Counsel]: And did you comply with that agreement that you made with Ms.
Kitchen?

 

[Frusher]: Fully, yes.

Finally, Kitchen, again, testified as follows:

[Frusher=s
Counsel]: Let me ask you this way: Is it a true statement that at the time that
the Curves business was opened in Grapevine that you and Mr. Frusher had an
oral agreement about how you would be compensated?

 

[Kitchen]: I would have to
say, yes, we did.








Thus, the jury may have considered the reasonable
value of Kitchen=s
compensable work the amounts that she withdrew from the Curves business account
pursuant to the alleged Aarrangement@ between her and Frusher.[4]








Our examination of the entire
record thus demonstrates that the jury heard varying evidence regarding the
value of Kitchen=s
compensable work but that no particular value was conclusively established as a
matter of law.[5]  See Uniroyal Goodrich
Tire Co., 977 S.W.2d at 334.  Accordingly, because the evidence failed to
establish a particular value for Kitchen=s compensable work as a matter of law, her legal sufficiency challenge
must fail.  We overrule Kitchen=s third issue.

B.  Factual Sufficiency

In reviewing an issue asserting that a finding is Aagainst the great
weight and preponderance@ of the evidence, we must consider and
weigh all of the evidence and set aside the finding only if the evidence is so
weak or the finding is so contrary to the great weight and preponderance of the
evidence as to be clearly wrong and unjust. 
Dow Chem. Co., 46 S.W.3d at 242; In re King's Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).

In accordance with the Texas Supreme Court's instruction,
we will detail the evidence relevant to the issue in consideration and clearly
state why the finding is factually insufficient or is so against the great
weight and preponderance as to be manifestly unjust, why it shocks the
conscience, or why it clearly demonstrates bias.  Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986) (op. on reh'g); see also Jaffe Aircraft Corp. v. Carr,
867 S.W.2d 27, 28 (Tex. 1993).








In the instant case, the record demonstrates that while
there is no conclusive evidence of a specific value for Kitchen=s work, the
evidence is uncontroverted that her work did have value.  The evidence detailed above showed that the
value of her work ranged from $8.00 per hour to $12.00 per hour, $24,000 per
year, and the amounts withdrawn from the Curves business account reflected in
the bank records.  The evidence that
Kitchen=s work had a
reasonable value thus overwhelmingly outweighs the jury=s finding that her
work had no value such that it is so contrary to the great weight and
preponderance of the evidence as to be clearly wrong and unjust.  See Dow Chem. Co., 46 S.W.3d at
242.  Accordingly, we hold that the
evidence is factually insufficient to support the jury=s zero value
finding, and we sustain Kitchen=s second
issue.  Therefore, having sustained her
second issue, unless independent grounds exist for upholding the verdict,
reversal is warranted.

VI.  Independent Grounds for Upholding the Jury
Verdict

Frusher cites four reasons
for upholding the jury verdict of zero value for Kitchen=s compensable work that were contained in his motion for directed
verdict presented at the close of the evidence, which was denied by the trial
court.








A directed verdict is proper only under limited
circumstances:  (1) when the evidence
conclusively establishes the right of the movant to judgment or negates the
right of the opponent or (2) when the evidence is insufficient to raise a
material fact issue.  See Prudential
Ins. Co. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Ray
v. McFarland, 97 S.W.3d 728, 730 (Tex. App.CFort Worth 2003,
no pet.); see also Tex. R. Civ. P.
268.  In reviewing a directed verdict, we
must view the evidence in the light most favorable to the party against whom
the verdict was rendered.  Szczepanik
v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994).

If the question to be decided is whether the losing party
at trial raised a material fact issue, we limit our consideration to the
evidence in that party=s favor and discard all contrary evidence
and inferences.  Id.  If we determine that any conflicting evidence
of probative value raises a material fact issue on any theory of recovery, then
the directed verdict is improper because such an issue is for the jury to
resolve.  Id.  When reviewing a directed verdict on a legal
issue, we consider all the evidence presented at trial, viewing it in the
losing party=s favor as much Aas the record
allows.@  S.V. v. R.V., 933 S.W.2d 1, 8 (Tex. 1996).

A.  Express Agreement








Frusher first asserts that if
a plaintiff and defendant have an express agreement for payment of services,
there cannot be a cause of action for quantum meruit as a matter of law.  Murray v. Crest Constr., Inc., 900
S.W.2d 342, 345 (Tex. 1995).  Although we agree with this basic
principle, it is inapplicable here because there is evidence that Kitchen and
Frusher did not have an express agreement regarding payment.  As we discussed above in section V.A.3, supra,
Kitchen had access to the Curves business account and used the funds to pay for
her personal expenses.  This, however,
was done with the understanding that she and Frusher were co-owners of the
business and that they would share equally in the profits.  She did not agree, as Frusher contended
during trial and continues to argue on appeal, that she was to be compensated
as an employee through her access to the business account.  Thus, the evidence was sufficient to create a
material fact issue regarding the parties= agreement for Kitchen=s payment of services. 
Accordingly, the trial court did not err by denying Frusher=s motion for directed verdict on this ground.  This additional ground for affirmance is
overruled.

B.  Expectation of Payment













Frusher next asserts that the
evidence conclusively established that he should not have known that Kitchen
expected to be paid additional money for her work at Curves above and beyond
her expenses drawn from the health club bank account.  He points to that part of the instruction in
question one discussing Acompensable
work,@ which states in part that Athe party accepting them [valuable services] should know that the
performing party expects to be paid for the work,@ which is consistent with element four of a quantum meruit claim.[6]  Frusher appears to argue that because there
is evidence Aconcerning
the existence of an express agreement between Kitchen and Frusher regarding her
compensation at work,@ he should
not have known that Kitchen expected to be paid additional monies.  However, as we discussed above, there is
evidence that Kitchen and Frusher did not have an express agreement concerning
compensation; evidence was presented demonstrating that the parties had two
different understandings regarding payment, i.e. Kitchen did not expect
compensation as an employee, but rather as an owner of the business.  As such, the issue is not whether Frusher
knew that Kitchen expected to be paid additional monies, but whether he knew
that she expected to be paid at all.  A
directed verdict is improper if more than a scintilla of evidence exists, that
is, if there is a reasonable basis for a differing conclusion as to whether
Frusher should have known Kitchen expected to be paid.  See Rocor Int=l, Inc. v. Nat=l Union Fire Ins. Co. of Pittsburgh, PA, 77 S.W.3d 253, 262 (Tex. 2002). 
Because Frusher asserts that they had an agreement to pay her expenses
from the club account, he obviously was on notice of her intent to be paid, in
conformance with the requirements of the quantum meruit cause of action.  Therefore, this additional ground for
affirmance is overruled.

C.  Insufficient Evidence

In his third ground, Frusher
urges that there was legally insufficient evidence to submit the question of
the value of the services to the jury. 
An assertion that the evidence is Ainsufficient@ to support
a fact finding means that the evidence supporting the finding is so weak or the
evidence to the contrary is so overwhelming that the answer should be set aside
and a new trial ordered.  Garza v.
Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 
We are required to consider all the evidence in the case in making this
determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).  As previously set forth in detail, there was
ample evidence presented as to the reasonable value of Kitchen=s services.  This ground is overruled.

D.  Cohabitation








Finally, Frusher asserts that
the fact that persons are living in the same household creates a presumption
that services are gratuitous, citing Coons-Andersen v. Andersen, 104
S.W.3d 630, 637-38 (Tex. App.CDallas 2003, no pet.), and Zaremba v. Cliburn, 949 S.W.2d 822,
825-26 (Tex. App.CFort Worth
1997, writ denied).  These cases involve
household-related services, not running an outside business.  Further, the Coons-Anderson case holds
that Awhere persons are living together as one household, services performed
for each other are presumed to be gratuitous, and an express contract for
remuneration must be shown or that circumstances existed showing a reasonable
and proper expectation that there would be compensation.@  Coons-Andersen, 104
S.W.3d at 638.  As previously
discussed, there is evidence that Kitchen had an expectation of remuneration.  Zaremba is a palimony suit subject to the
statute of frauds, and we find it inapplicable. 
949 S.W.2d at 825-26.  Therefore,
this ground is also overruled.

VII.  Conclusion

In light of our holding
sustaining Kitchen=s second
issue and our having overruled Frusher=s independent grounds for affirmance, it is unnecessary for us to
reach Kitchen=s fourth
issue.  See Tex. R. App. P. 47.1.  This cause is reversed and remanded for a new
trial.

 

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

 

DELIVERED:
November 10, 2005











[1]Frusher testified that only after
Kitchen hired an attorney did he become aware that Kitchen was claiming that
she was entitled to compensation exceeding her Curves account withdrawals.





[2]See Torres v. Caterpillar, Inc., 928 S.W.2d 233, 244-45 (Tex. App.CSan Antonio 1996, writ denied), and
Roling v. Alamo Group (USA), Inc., 840 S.W.2d 107, 110 (Tex. App.CEastland 1992, writ denied), for a
discussion of the First Texas Service Corp. holding.





[3]When both legal and factual
sufficiency challenges are raised on appeal, we must first examine the legal
sufficiency of the evidence.  Glover
v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981).





[4]The arrangement regarding Kitchen=s use of the business account is not
Apayment@ evidence and was not subject
to the trial court=s ruling granting Kitchen=s motion to exclude.  The trial court made it clear that its ruling
Adoesn=t preclude [Frusher] from talking
about what [his] arrangement is and the fact that [Kitchen] took money out.@ 
Indeed, Kitchen=s counsel stated, A[W]e didn=t get into amounts, and that=s what my objection is to.  If they start getting into amounts to try
to offset, then that=s what you have to plead payment
for.@ (Emphasis added). 

These statements also
clarify the extent of the trial court=s decision to exclude particular amounts of payment
evidence.  Plaintiff=s Exhibit 2, the Curves bank
records detailing the deposits and withdrawals made on the account from April
2001 through June 2003, was offered into evidence by Kitchen just before the
trial court announced the names of the twelve individuals chosen to serve on
the jury panel.  Frusher offered no
objection to the evidence, which the trial court admitted.  After Kitchen objected to Frusher=s attempt to introduce alleged Apayment@ evidence, the trial court
ultimately prohibited Frusher from admitting specific evidence of payment in
order to show an offset.  It did
not prohibit the jury from considering Plaintiff=s Exhibit 2 for other purposes,
such as determining the amount of money Kitchen withdrew from the account.    





[5]Kitchen also does not assert that a
particular sum of money has been conclusively established as a matter of law,
which is fatal to her legal sufficiency argument.  See Ponce v. Sandoval, 68 S.W.3d 799,
809 (Tex. App.CAmarillo 2001, no pet.) (holding
that a challenge to the legal sufficiency of the evidence by a party with the
burden of proof on the issue fails under the inquiry=s second prong when movant Adoes not assert that a particular
sum of money has been conclusively established by the evidence.@). 






[6]The elements of a quantum meruit
claim are (1) valuable services and/or materials were furnished, (2) to the
parties sought to be charged, (3) which were accepted by the parties sought to
be charged, and (4) under circumstances that reasonably notified the recipient
that the complaining party, in performing, expected to be paid by the
recipient.  Heldenfels Bros., Inc. v.
City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992).