**Opinion issued August 28, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-23-00755-CV**

_____

**JILL STANLEY AND STANLEY WRIGHT, Appellants**

**V.**

**DFW BOATS, ESTATE OF JANET (FARROW) MELAMED, S AND S TRANSPORTATION, INC., WFM REALTY INC., WFM EQUITY ADVISORS, INC., Appellees**

---

**On Appeal from the 141st District Court**
**Tarrant County, Texas[1]**
**Trial Court Case No. 141-320246-20**

---

[1] The Supreme Court of Texas transferred this appeal from the Court of Appeals for the Second District of Texas to this Court pursuant to its docket equalization powers. *See* TEX. GOV'T CODE § 73.001 ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer."). We are unaware of any conflict between the precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## MEMORANDUM OPINION

Appellants Jill Stanley and Stanley Wright appeal the trial court's take-nothing judgment entered against them on their claims under the Texas Uniform Fraudulent Transfer Act.[2]  They argue the trial court erred in finding that two transfers—a $30,000 loan repayment to one of the appellees and a used pickup truck given to an employee of one of the appellees—were not made by appellees in an effort to avoid a judgment entered in a previous personal injury case.  In two issues, they argue (1) the evidence is legally insufficient to sustain the trial court's judgment, and (2) the evidence is factually insufficient to sustain the judgment.

We affirm.

## Background[3]

Appellant Jill Stanley was injured in a boating accident on June 18, 2016.  In May 2017, she filed a personal injury lawsuit against DFW Boats, who then owned the boat,[4] and the boat's manufacturer, Voyager Marine.[5]  DFW Boats appeared in

---

[2]  TEX. BUS. & COM. CODE § 24.001–.013.

[3]  During trial, Stanley sought to set aside ten purportedly fraudulent transfers for a collective $197,737.12.  On appeal, however, Stanley only challenges two transfers: a $30,000 loan repayment to Justin Scott Suggs' mother's bank account, and the gifting of a 2004 Ford F-250 to DFW Boats employee Jorge Luna.  We thus limit our discussion to the testimony and evidence regarding those two transfers.

[4]  The boat was sold "on consignment by Bank of America."

[5]  Voyager Marine is not a party to this appeal and is not related to any parties to this appeal.

the lawsuit by filing an answer on May 24, 2017.  Two years later, in June 2019, the trial court rendered judgment in Jill's favor awarding her $1,114,478.83 in damages. DFW Boats did not appear at trial.[6, 7, 8]

Later, in September 2020, Appellants Jill Stanley and Stanley Wright (collectively, "Stanley")[9] filed the present lawsuit against Appellees DFW Boats, Justin Scott Suggs, the Estate of Janet (Farrow) Melamed, S and S Transportation, WFM Realty, Inc., and WFM Equity Advisors, Inc. ("Appellees") to set aside ten transfers it alleged Appellees made in 2019 to avoid Jill's personal injury judgment. In June 2023, after a one-day bench trial, the trial court entered a take-nothing judgment in favor of Appellees.[10]

## Trial

The witnesses at trial included Appellee Justin Scott Suggs, Appellant Stanley Wright, and accountant Andrew Dummit.

---

[6]  According to the trial court's findings of fact, DFW Boats did not appear "because the company was already out of business" and was "all but judgment proof[.]"

[7]  The pleadings from Jill's underlying personal injury lawsuit are not part of the record.  It is unclear how much of the $1.1 million judgment in her favor was rendered against DFW Boats and how much was rendered against Voyager Marine.

[8]  A final judgment *nunc pro tunc* was signed on October 16, 2019.

[9]  Wright was the receiver appointed over DFW Boats following the judgment in the personal injury lawsuit.

[10]  Justin Scott Suggs, the Estate of Janet (Farrow) Melamed, S and S Transportation, Inc., and WFM Realty Inc. were not parties to Jill's personal injury lawsuit, and they are not debtors on the judgment in that suit.

3

**Justin Scott Suggs**

Suggs testified that his mother, Janet Farrow Melamed, died on May 19, 2016, and named him executor of her estate. Melamed's estate is the sole shareholder of WFM Equity Advisors, Inc. ("WFM"). According to Suggs, WFM did business as DFW Boats and as DFW Boats Com., Inc. (together, "DFW Boats"). Suggs testified that he is the only person who ran DFW Boats, handled the books, sales, and profits and losses from 2016 through the time of trial.[11] Indeed, after his mother's death, Suggs—who had always been an officer of DFW Boats—identified himself as DFW Boats' sole shareholder on its tax returns.

Suggs testified that he ran DFW Boats through Melamed's estate. On January 26, 2018, Suggs completed an Inventory, Appraisement and List of Claims for Melamed's estate. Jill's personal injury lawsuit—filed in May 2017—was not included in the List of Claims.

Suggs testified that DFW Boats was in the business of buying and selling boats and boat parts and installation of the parts. It made a profit beginning in 2001, when it commenced operations, and remained profitable up to 2008. In 2009, "it started trending downward." Suggs testified that DFW Boats "never really survived after" the recession of 2008. Suggs testified that DFW Boats did not appear at Jill's

---

[11] WFM Realty is 100 percent owned by Melamed's estate and has been since her death. The estate's attorneys run WFM Realty, Inc. And S and S Transportation, Inc. is a corporation Suggs founded and for which he is solely responsible.

personal injury trial in 2019 because "DFW Boats was already on track to be closed from an operating perspective." And its tax returns showed DFW Boats operated at a loss from 2012 through 2018, with projected losses in 2019. DFW Boats went out of business in 2019.

On August 7, 2019, DFW Boats Com., Inc. wrote a check to Melamed to repay a 2017 loan made to DFW Boats to "assist with business expenditures."[12] The loan apparently was not memorialized in writing, identified on any accounting ledgers as a loan, or disclosed on the Inventory, Appraisement and List of Claims that Suggs prepared on behalf of Melamed's estate.[13] Suggs testified that when he wrote the check to repay the loan, he knew there was a judgment in favor of Jill from the personal injury lawsuit. Suggs endorsed the check and deposited it in Melamed's bank account. He also paid legal fees to the law firm representing him and his co-defendants in the present litigation from Melamed's bank account. Suggs testified that the cost for DFW Boats' defense in the personal injury lawsuit was primarily paid out of Melamed's checking account.

Suggs also testified that DFW Boats purchased a used Ford F-250 truck in

---

[12]    The memo line on the check stated, "Loan Repay 1/7/17 – 3/8/17."

[13]    The loan repayment was identified as a "shareholder distribution" in DFW's records.

5

2008 for approximately $13,300.[14]  According to Suggs, over time, the truck was "fully depreciated," so there was "zero book value" left on it.  The truck was "gifted" to a longtime DFW Boats employee, Jorge Luna, in 2019.  According to Suggs, the truck had 289,000 miles on it and was at least eleven years old.  Suggs testified he gave it to Luna because the truck "was going to need [] $3,000 or $4,000 worth of repair."

Suggs testified that DFW Boats has never made any payment on the judgment in the personal injury lawsuit or set aside money to pay any portion of the judgment.

**Stanley Wright**

Wright testified as an expert witness for Stanley.  He testified that, in his opinion, a number of fraudulent transfers had been made, including the loan repayment to Melamed and the gift of the truck.  With respect to the Ford truck, he testified the gift was documented as an employee advance for an automobile in the amount of $13,388.

**Andrew Dummit**

Dummit was DFW Boats' accountant.  He testified that the $30,000 loan repayment may have been identified on DFW Boats' accounting ledgers as a shareholder distribution because of the favorable tax consequences of classifying it

---

[14]   There was conflicting evidence at trial as to whether the purchase price of the truck was $13,388 or $13,300.  There also was conflicting evidence as to whether the Ford was a 2004 or 2005 model.

that way, although he could not say for sure that happened in this case. With respect to the truck, he testified it was fully depreciated so that there was "zero book value" left on it. However, he testified, the truck was still an asset of the company and could still have had value when it was gifted to Luna.

On June 22, 2023, the trial court entered a take-nothing judgment in favor of Appellees.

## Findings of Fact and Conclusions of Law

The trial court entered findings of fact and conclusions of law on August 7, 2023. Among them were the following findings of fact, which Stanley challenges for legal and factual sufficiency:

(18) As a seller of what are essentially luxury items, DFW Boats nearly went out of business following the 2008 great recession and never really recovered. As evidenced by its tax returns, among other things, DFW Boats was operating at a loss before Plaintiff filed the personal injury case and sustained losses year-over-year until it ceased operations in 2019. Notwithstanding these losses, Plaintiff presented no competent evidence that DFW Boats was insolvent or rendered insolvent at the time of or because of any of the complained-of transactions.

(19) All but three of the alleged transfers about which Plaintiff complains are derived from DFW Boats' general ledger, each of which was entered by DFW Boats' outside CPA, Andy Dummit. Plaintiff has presented no evidence to prove that any of those entries were, in fact, transfers to an insider or in any way fraudulent as to Plaintiff. Plaintiff's conclusions drawn from these general ledger entries is entirely speculative. Further, Plaintiff's reliance on the names assigned to certain journal entries is misplaced. The naming conventions or categories assigned by DFW Boats' CPA to journal entries was a function

7

of the QuickBooks software he was using and his own professional judgment; the labels assigned to several entries do not correspond with the actual substance of the underlying journal entry.

(20) The $30,000 loan that Plaintiff complains DFW Boats repaid to Janet Melamed after her passing, was a valid debt of DFW Boats that was made before Plaintiff filed the personal injury case. The loan itself was made in two tranches, $20,000 on January 7, 2017 and $10,000 on March 8, 2017. The check made payable to "Janet Melamed" dated August 7, 2019 was a legitimate payment of that loan of equivalent value received from Mrs. Melamed during her lifetime. That transfer was not fraudulent as to Plaintiff.

(22) All 12/31/2019 general ledger entries about which Plaintiff complains were end-of-year bookkeeping or "paper" entries only. They are not, standing alone, legally or factually sufficient evidence of any transfer, fraudulent or otherwise.

(28) Plaintiff asserts that a $20,000 wire transfer from Janet Melamed's Bank of America account to JP Morgan Chase Bank on January 9, 2017 was a fraudulent transfer as to Plaintiff. Plaintiff misunderstands this transaction. The wire transfer at issue was from Janet Melamed's bank account into DFW Boats' bank account. Moreover, this incoming transaction is 2/3 of the $30,000 loan Plaintiff complains about elsewhere. Additionally, this incoming transaction predates the underlying lawsuit. No transaction made before May 9, 2017 can be fraudulent as to Plaintiff.

(30) Plaintiff[] asserts that DFW Boats' General Ledger Journal Entry number 22 dated 12/31/19 and identified as an "Employee Advance" in the amount of $13,388 is fraudulent as to Plaintiff. Again, however, this entry reflects a credit to the company's books, not a transfer out. DFW Boats gave one of its employees a 2004 Ford F250 with a damaged transmission that would have cost more to repair than it was worth. This end-of-year accounting entry merely reconciled the vehicle's book balance with unaccounted for depreciation; it does not reflect the actual

value of the truck at the time of its disposition and the disposition of the truck was neither made while DFW Boats was insolvent nor rendered it insolvent. Plaintiff's complaint about this transaction is without merit.

(40) Plaintiff offered no testimony of any person with personal knowledge of any alleged transfer other than Defendant Suggs.

(41) No defendant made any transfer within the meaning of the statutes pled by Plaintiff.

(42) No defendant made any transfer with actual intent to hinder, delay, or defraud Jill Stanley.

(43) DFW Boats received reasonably equivalent value in exchange for any transfer alleged by Plaintiff.

Stanley also complains of two conclusions of law made by the trial court:

(9) Plaintiff has failed to prove that any transaction or transfer constitutes a fraudulent conveyance under either Section 24.005(a) or 24.006 of the UCC. More specifically, Plaintiff has failed to establish that any of the transfers complained of were made with actual intent to hinder, delay, or defraud Plaintiff or that DFW Boats failed to receive reasonably equivalent value in exchange for any transfer. Each transfer alleged by Plaintiff to be fraudulent was either not a transfer at all, was made before Plaintiff's claim arose, or was supported by reasonably equivalent value. Plaintiff erroneously conflates her lawsuit with the winding up of DFW Boats, when in fact the former had no causal relationship with the latter. DFW Boats went out of business regardless of the lawsuit, not because of it.

(12) Plaintiff's 24.006(b) claim as to the $30,000 payment from DFW Boats to Janet Melamed is barred by limitations. *See* TEX. BUS. & COM. CODE § 24.010(3).

This appeal ensued.

9

## Standard of Review

"When a party with the burden of proof loses at trial and asks an appellate court to render judgment in his favor, that party must show that the evidence conclusively established his entitlement to judgment." *Barnes v. Mathis*, 353 S.W.3d 760, 762 (Tex. 2011); *Kroesche v. Wassar Logistics Holdings, LLC*, No. 01-20-00047-CV, 2023 WL 1112002, at *7 (Tex. App.—Houston [1st Dist.] Jan. 31, 2023, pet. denied). We will find the evidence is conclusive only if "reasonable people cannot differ in their conclusions." *Kroesche*, 2023 WL 1112002, at *7 (citing *Helix Energy Sols. Grp. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017)). In our analysis, we "ask whether reasonable factfinders could differ about the fact determinations made by the trier of fact based on the evidence as a whole." *Id.* at *7.

When both factual and legal sufficiency challenges are raised, the appellate court should first resolve the legal sufficiency challenge. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex. 1981); *Kitchen v. Frusher*, 181 S.W.3d 467, 473 n.3 (Tex. App.—Fort Worth 2005, no pet.). When an appellant attacks the legal sufficiency of an adverse finding on an issue for which the appellant bore the burden of proof, he "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Id.* at 473; *Altice v. Hernandez*, 668 S.W.3d 399, 410 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (quoting *Dow*

10

*Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)). That is, we will sustain a legal sufficiency challenge if our review of the evidence "demonstrates a complete absence of a vital fact, or the evidence offered is less than a scintilla." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). Evidence is more than a scintilla if it would allow "reasonable and fair-minded people to reach different conclusions." *Id.* Evidence that creates "a mere surmise or suspicion of a vital fact" constitutes no evidence. *Id.* "We consider the evidence in the light most favorable to the judgment, 'crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.'" *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)).

When reviewing a factual sufficiency challenge, we "must consider and weigh all of the evidence," not just the evidence that supports the trial court's finding. *Altice*, 668 S.W.3d at 410 (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). Our review of the evidence must be conducted in a neutral light. *Altice*, 668 S.W.3d at 410. When a party attacks the factual sufficiency of an adverse finding on an issue for which it had the burden of proof, it must demonstrate on appeal "that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Regardless of which standard is used, the trial court is the sole judge of the credibility

11

of witnesses and the weight to be given their testimony. *Altice*, 668 S.W.3d at 410 (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

We review the trial court's findings of fact for legal and factual sufficiency using the same standards we apply in reviewing the evidentiary sufficiency of a jury findings. *Gonyea v. Scott*, 541 S.W.3d 238, 244 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). We review conclusions of law de novo, and we may draw our own legal conclusions if warranted. *Jericho Graphics Corp. v. Haynes*, No. 01-03-00987-CV, 2004 WL 2538677, at *2 (Tex. App.—Houston [1st Dist.] Nov. 10, 2004, no pet.) (mem. op.); *Muller v. Nelson, Sherrod & Carter*, 563 S.W.2d 697, 702 (Tex. App.—Fort Worth 1978, no writ) (noting trial court's conclusions of law are not binding "and the appellate court is free to make its own legal conclusions"). We uphold conclusions of law "if the judgment can be sustained on any legal theory supported by the evidence." *Qui Phuoc Ho v. MacArthur Ranch, LLC*, No. 05–14–00741–CV, 2015 WL 5093273, at *3 (Tex. App.—Dallas Aug. 28, 2015, pet. denied) (mem. op.) (citing *Highland Credit Opportunities CDO, L.P. v. UBS AG*, 451 S.W.3d 508, 519 (Tex. App.—Dallas 2014, no pet.)).

### The Texas Uniform Fraudulent Transfer Act

The Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COM. CODE § 24.001–.013 ("TUFTA"), is "designed to protect creditors from being defrauded or left without recourse due to the actions of unscrupulous debtors," and its purpose

is to "prevent debtors from defrauding creditors by placing assets beyond their reach." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015); *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016) ("TUFTA's purpose is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach."). "Creditors may invoke TUFTA to 'claw back' fraudulent transfers from their debtors to third-party transferees." *Janvey v. GMAG*, LLC, 592 S.W.3d 125, 126 (Tex. 2019).[15] That is, TUFTA allows a creditor, under certain circumstances, to set aside a debtor's fraudulent transfer of assets. *Cohen v. NewBiss Prop., L.P.*, No. 01-19-00397-CV, 2020 WL 6878414, at *9 (Tex. App.—Houston [1st Dist.] Nov. 24, 2020, pet. denied) (mem. op.) (citing TEX. BUS. & COM. CODE § 24.008).

TUFTA provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation":

    (1)    with actual intent to hinder, delay, or defraud any creditor of the debtor; or

    (2)    without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

        (A)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor

---

[15]    To avoid confusion with *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016) ("*Janvey*"), we refer to *Janvey v. GMAG*, LLC, 592 S.W.3d 125, 126 (Tex. 2019) in subsequent references as "*GMAG*."

were unreasonably small in relation to the business or transaction; or

(B)     intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE § 24.005(a).[16, 17]   Section 24.005(b) enumerates a non-exclusive list of factors to be considered when determining whether a debtor acted with actual intent to hinder, delay, or defraud a creditor. *Id.* § 24.005(b); *see Spencer & Assocs., P.C. v. Harper*, 612 S.W.3d 338, 356 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *GMAG*, 592 S.W.3d at 129 ("TUFTA's badges provide guidance in

---

[16]     Put another way, a TUFTA plaintiff must generally prove four elements:

> (1) that it is a creditor with a claim against (2) a debtor; (3) that the debtor transferred assets after, or a reasonable time before, the plaintiff's claim arose; and (4) that the transfer was made with the intent to hinder, delay, or defraud the plaintiff creditor.

*Luminex Corp. v. Hiller*, No. 02-23-00256-CV, 2024 WL 4293381, at *4 (Tex. App.—Fort Worth Sept. 26, 2024, no pet.) (mem. op.) (citing *Nat'l Cleaners, LLC v. Aron*, No. 14-21-00549-CV, 2022 WL 3973591, at *4 (Tex. App.—Houston [14th Dist.] Sept. 1, 2022, no pet.) (mem. op.)).

[17]     Under TUFTA, a "debtor" is "a person who is liable on a claim." TEX. BUS. & COM. CODE § 24.002(6). A "creditor" is "a person . . . who has a claim." *Id.* § 24.002(4). A "person" is an "individual, partnership, corporation, association, organization, government or governmental subdivision or agency, business trust, estate, trust, or any other legal or commercial entity." *Id.* § 24.002(9). A "claim" is a "right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 24.002(3). A "transfer" includes "every mode . . . of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Id.* § 24.002(12). An "asset" is the "property of a debtor" but does not include, among other things, property encumbered by a valid lien or property that is generally exempt under non-bankruptcy law. *Id.* § 24.002(2).

determining whether a transfer was made or obligation incurred with actual intent to hinder, delay, or defraud a creditor."). These factors, also known as "badges of fraud," include whether:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Spencer & Assocs.*, 612 S.W.3d at 356 (citing TEX. BUS. & COM. CODE § 24.005(b)). Although they may be circumstantial evidence, these badges of fraud are considered "[b]ecause direct proof of the debtor's intent is often unavailable." *Kalkan v. Salamanca*, 672 S.W.3d 725, 731 (Tex. App.—Houston [14th Dist.] 2023, no pet.).

Finally, Section 24.006(a) of the Business and Commerce Code provides that constructive intent to defraud may be established as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

15

TEX. BUS. & COM. CODE § 24.006(a).[18]  And Section 24.006(b) provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

TEX. BUS. & COM. CODE § 24.006(b).

## Discussion

## A.    S and S Transportation, Inc. and WFM Realty Inc.

As a preliminary matter, we address Appellees' argument that Stanley did not present anything for this Court to review as to S and S Transportation, Inc. and WFM Realty, Inc.  We agree.  Stanley's opening brief is devoid of arguments as to either entity.  They do not directly challenge the legal or factual sufficiency of the final judgment at it pertains to these two entities.

In the absence of any argument as to S and S Transportation, Inc. and WFM Realty, Inc., Stanley has waived its appeal with respect to these two entities.  *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").  We overrule Stanley's arguments as to both entities.[19]

---

[18]    TUFTA provides a defrauded creditor with remedies including "avoidance of the transfer . . . to the extent necessary to satisfy the creditor's claim."  TEX. BUS. & COM. CODE § 24.008(a)(1).

[19]    The trial court stated in a conclusion of law that S and S Transportation, Inc. and WFM Realty, Inc., "having no legal or operational connection with DFW Boats and

16

## B.    The Other Appellees

Stanley argues that two transfers violated TUFTA: the transfer in the form of a loan repayment of $30,000 from DFW Boats' bank account to Melamed's bank account on August 7, 2019, and the transfer of DFW Boats' Ford F-250 truck to its employee Jorge Luna in 2019.  Both transfers occurred after judgment was rendered in Jill's personal injury lawsuit.

Stanley had the burden of proof at trial to prove the necessary elements of fraudulent transfer for each of these transfers.  *Tex. Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 311 (Tex. App.—El Paso 2009, no pet.) ("The judgment creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence.") (citing *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 842 (Tex. App.—Dallas 2006, no pet.)).  On appeal, they must establish they conclusively carried their burden at trial and that the trial court could not have reasonably found otherwise.  *See Dow Chem. Co.*, 46 S.W.3d at 242 ("The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak

---

having not been the recipients of any alleged transfers, are not proper parties to this case."  Stanley does not challenge this conclusion of law on appeal.  Nor does Stanley challenge the trial court's conclusion of law that the Estate of Janet (Farrow) Melamed was not a proper party to the case.  *See Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex.1987) (recognizing that estate's representative, and not estate itself, is proper party to litigation).  However, TUFTA claims may be brought against the debtor and "the transferee of an asset or the person for whose benefit the [fraudulent] transfer was made."  *Sargeant v. Al Saleh*, 512 S.W.3d 399, 414 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.).

or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.").

### 1.    Actual Intent to Defraud and the Badges of Fraud

Stanley argues that the record establishes Appellees made the two transfers with actual intent to defraud in violation of TUFTA. "Intent to defraud is ordinarily a fact question." *Janvey*, 487 S.W.3d at 567. In determining actual intent under Section 24.005(a)(1) of TUFTA, the presence of badges of fraud "can form a proper basis for an inference of fraud." *Van Slyke v. Teel Holdings, LLC*, No. 01-08-00600-CV, 2010 WL 2788876, at *4 (Tex. App.—Houston [1st Dist.] July 15, 2010, no pet.) (mem. op.); *see also Luminex Corp. v. Hiller*, No. 02-23-00256-CV, 2024 WL 4293381, at *4 (Tex. App.—Fort Worth Sept. 26, 2024, no pet.) (mem. op.) (explaining badges of fraud "may be considered when determining fraudulent intent").

On appeal, Stanley argues the presence of six badges of fraud indicate Appellees acted with actual intent in making the two transfers.[20] In so doing, Stanley challenges the legal and factual sufficiency of the trial court's determination that no fraudulent transfers were made.

---

[20]    *See Qui Phuoc Ho v. MacArthur Ranch, LLC*, 395 S.W.3d 325, 329 (Tex. App.—Dallas 2013, no pet.) ("The presence of several of these factors is sufficient to support a fact finder's reasonable inference of fraudulent intent.") (citing *Mladenka v. Mladenka,* 130 S.W.3d 397, 405 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

Several badges of fraud are salient to our analysis of whether the transfers violated Section 24.005(a)(1) of TUFTA. As noted, the badges of fraud are a non-exclusive statutory list of factors we may consider when determining whether there was actual intent to hinder, delay, or defraud a creditor when making a transfer. Given the testimony elicited and evidence proffered at trial, we consider the following badges in our sufficiency analysis:

- Transfer to an Insider;[21]

- Control of the Assets Post-Transfer;[22]

- Date of the transfer;[23]

- Whether the transfer was substantially all of DFW Boats' Assets; [24]

- Value of Consideration/Reasonably Equivalent Value;[25] and

- Insolvency.[26]

### a.  The Loan Repayment

Stanley only offered the testimony of one person with personal knowledge of the loan repayment: Suggs. He explained that the $30,000 payment was for

---

[21]  *See* TEX. BUS. & COM. CODE § 24.005(b)(1).

[22]  *Id.* § 24.005(b)(2).

[23]  *Id.* § 24.005(b)(4).

[24]  *Id.* § 24.005(b)(5).

[25]  *Id.* § 24.005(b)(8).

[26]  *Id.* § 24.005(b)(9).

repayment of a loan that preceded the date of the final judgment. There was no direct evidence establishing the repayment was made with actual intent to hinder, delay or defraud Jill. Stanley argues on appeal that the badges of fraud conclusively establish otherwise. We disagree.

### (1)  Transfer to an Insider and Control After Transfer

TUFTA defines "insider" when the debtor is a corporation to include a director, officer, or person in control of the corporation; a partnership in which the corporation is a general partner; a general partner of a partnership; and a relative of a general partner, director, officer, or person in control of the corporation. TEX. BUS. & COM. CODE § 24.002(7)(B). The list is "illustrative rather than exhaustive." *Wohlstein v. Aliezer*, 321 S.W.3d 765, 777 n.19 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Courts have recognized that others may be "non-statutory insiders" depending on "whether a person's transactions with the debtor were at arm's length." *U.S. Bank Nat'l Ass'n v. Village at Lakeridge, LLC,* 583 U.S. 387, 387 (2018). This inquiry also considers the closeness of the relationship between the debtor and the party to whom the asset is transferred. *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 431 (Bankr. N.D. Tex. 2021); *see In re Senior Care Centers, LLC*, No. 3:21-CV-01498-B, 2023 WL 7137097, at *24 (Bankr. N.D. Tex. Oct. 30, 2023) ("[C]ourts have recognized the concept of an extra-statutory or non-statutory insider of a debtor as a person who is not listed in the statute but who has a sufficiently close

20

relationship to the debtor such that any transactions between the two necessarily would not have been conducted at arms' length.").[27, 28] A person is an insider if "as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arm's length." *In re Olmos Equip., Inc.*, 601 B.R. 412, 420 (Bankr. W.D. Tex. 2019) (citation omitted).

Suggs became DFW Boats' sole shareholder and officer when Melamed died on October 16, 2016. Indeed, the trial court found that Suggs "was, and has always been, an officer of DFW Boats. After his mother's passing, Scott Suggs continued to manage operations and was identified as the shareholder of DFW Boats on its tax returns." Suggs is an insider as expressly defined by TUFTA, given that he was a director, officer, or person in control of the corporation when the transfer was made. *See* TEX. BUS. & COM. CODE § 24.002(7)(B). The court erred to the extent it found otherwise.

---

[27] The Supreme Court of Texas has defined "arms-length transaction" as a "transaction between two unrelated and unaffiliated parties." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 85 n.11 (Tex. 2015).

[28] We cite bankruptcy cases because TUFTA and the Bankruptcy Code "are of common ancestry; cases under one are considered authoritative under the other." *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 265 (5th Cir. 2016) (citation omitted); *see In re Prince*, No. 09-43627, 2012 WL 1095506, at *5 (Bankr. E.D. Tex. Mar. 30, 2012) ("The fraudulent transfer provisions in TUFTA and § 548 of the Bankruptcy Code are 'virtually identical.' Cases interpreting TUFTA are frequently relied on in § 548 cases and vice versa.") (internal citation omitted).

Suggs retained control of the money paid to the Melamed bank account for the loan repayment. For example, he testified during trial that he used some of that money to pay legal expenses incurred in defending against Stanley's lawsuit. He further testified that he is the only one with control over Melamed's checking account, which belongs to her estate, of which he is the executor.[29] There was thus some evidence for these two badges of fraud.

### (2) Date of the transfer

The final judgment in Jill's personal injury suit is dated June 16, 2019. DFW's check to Melamed's checking account is dated August 7, 2019. At first blush, this badge appears to weigh in favor of a finding that the transfers were fraudulent. However, the evidence established that the loan was made on January 7, 2017, and March 8, 2017—prior to Jill's personal injury judgment. As such, the evidence established that the loan repayment was a legitimate reimbursement for that loan, regardless of when it was paid. This badge weighs against a finding of fraud.

### (3) Whether the Transfers were Substantially All of DFW Boats' Assets

The trial court found DFW Boats ceased operations by August 17, 2019, ten days after the date of the $30,000 check to Melamed. The DFW Boats balance sheet

---

[29] Appellees argued that Suggs did not have absolute control over the funds in the estate because he owed fiduciary duties to the estate. While that may be true, there was no testimony elicited about any fiduciary duties owed to the estate that would have precluded Suggs from having control over the funds repaid to the estate.

shows that its liabilities and equity were equal to its assets.[30]  And its tax return history reports reflect losses from 2012 through 2018, with a projected loss in 2019 of negative $260,576.  The trial court found that at the time of Jill's personal injury trial, DFW Boats had approximately $45,000 in its bank account.  The $30,000 reimbursement would have left approximately $15,000 in DFW Boats' bank account.  This evidence neither weighs in favor or against a determination that the loan repayment was fraudulent.

### (4) Value of Consideration/Reasonably Equivalent Value[31]

The trial court determined the loan repayment was a "legitimate payment of that loan of equivalent value."  The evidence showed the loan was made in two installments—$10,000 and $20,000—prior to Jill's personal injury judgment, and the repayment was for $30,000.[32]  This is a reasonably equivalent value for the transfer.  This badge weighs against a finding of actual intent to defraud.

---

[30]    Dummit testified that because DFW Boats' operations had "ceased," "that is typically what we have to do if there's still some assets or liabilities on the books, we have to have a discussion with the client, and then we'll make these adjustments and zero out the balance sheet."

[31]    "Reasonably equivalent value" is defined as including "without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction."  TEX. BUS. & COM. CODE § 24.004(d).

[32]    Although it does not change our analysis, we note that the evidence does not support the trial court's finding that the loan was made "during [Melamed's] lifetime."

23

### (5)     Insolvency

Appellants argue that the loan repayment caused DFW Boats to become insolvent. TUFTA provides that a debtor "is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." TEX. BUS. & COM. CODE § 24.003(a). Alternatively, "[a] debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent." *Id.* § 24.003(b).[33, 34] The "balance sheet test" is a test for insolvency under TUFTA. *In re Acis Capital Management, LP*, No. AP 20-3059, 2025 WL 1199386, at *6 (N.D. Tex. Apr. 24, 2025); *see In re Triplett*, No. 19-42570, 2023 WL 2750899, at *9 (Bankr. E.D. Tex. Mar. 31, 2023) (explaining courts considering whether debtor is insolvent may conduct "balance sheet test, and engage in the 'fair valuation' of the debts and

---

[33]     Section 24.003(a) of TUFTA "parallels the Bankruptcy Code's approach to insolvency." *In re Triplett*, No. 19-42570, 2023 WL 2750899, at *9 (Bankr. E.D. Tex. Mar. 31, 2023).

[34]     The definition of "insolvency" is "not definitely fixed" and "not always used in the same sense." Rather, the meaning depends on "the business or fact situation to which the term applies." *RSS MSBAM2014C17-TX HAH, LLC v. Houston Airport Hosp. LP*, No. 01-21-00042-CV, 2024 WL 3995434, at *8 (Tex. App.—Houston [1st Dist.] Aug. 30, 2024, no pet.) (mem. op.) (quoting *Parkway/Lamar Partners, L.P. v. Tom Thumb Stores, Inc.*, 877 S.W.2d 848, 849 (Tex. App.—Fort Worth 1994, writ denied)). *See D'Olivio v. Fox*, No. 05-18-00868-CV, 2020 WL 4047868, at *10 (Tex. App.—Dallas July 20, 2020, pet. denied) (mem. op.) (defining insolvency to mean "an inability to pay debts as they mature"); *Insolvency*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining insolvency to mean: "1. The condition of being unable to pay debts as they fall due or in the usual course of business. 2. The inability to pay debts as they mature.").

property shown on the debtor's balance sheet.") (citing *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 268 (Bankr. N.D. Tex. 2003)).[35, 36]

If the debtor generally fails to pay his debts as they become due, "insolvency is presumed—i.e., a presumption arises that the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." *In re Acis Capital Management*, 2025 WL 1199386, at *6; *see generally Corpus v. Arriaga*, 294 S.W.3d 629, 637 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (concluding evidence was legally insufficient to support trial court's finding that debtors were not insolvent as result of transfers made after judgment was rendered against them, when transfers left debtors with no assets with which to pay judgment).

Suggs testified that DFW Boats was not insolvent by the end of 2017. But DFW Boats presented only the 2018 balance sheet—not a balance sheet from when the transfers were made—and which did not show liabilities exceeded assets. Suggs testified that WFM Equity Advisors, Inc. was not insolvent as of December 2018, that it "still had money to continue to pay debts and operate" and that it had money

---

[35]   The evidence proffered at trial included a balance sheet for 2018 but not for any other year.

[36]   In addition to the balance sheet test, insolvency may be determined through the cash flow test, which requires "conclusive or overwhelming evidence that [the debtor] missed the [l]oan payments because it was unable to pay." *RSS MSBAM2014C17-TX HAH*, 2024 WL 3995434, at *9 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

because of "[b]oat sales." Stanley did not elicit any testimony that DFW Boats or WFM Equity Advisors, Inc. failed to pay its debts, other than Jill's judgment. *See RSS MSBAM2014C17-TX HAH, LLC v. Houston Airport Hosp. LP*, No. 01-21-00042-CV, 2024 WL 3995434, at *14 (Tex. App.—Houston [1st Dist.] Aug. 30, 2024, no pet.) (mem. op.) (rejecting argument that debtor's failure to pay one loan payment established insolvency presumption under TUFTA because evidence supported fact that debtor "generally" was paying its debts). And as noted, the trial court found that Stanley "presented no competent evidence that DFW Boats was insolvent or rendered insolvent at the time of or because of any of the complained-of transactions" and that DFW Boats, having already begun to wind down, "did not go out of business because of the Jill Stanley case or to avoid the judgment in that case." This badge therefore does not support Appellants' argument.

Of these six badges of fraud, only two weigh in favor of a finding that the $30,000 loan reimbursement was made with actual intent to hinder, delay, or defraud in violation of TUFTA. Our legal sufficiency review must be conducted with an eye toward the evidence that supports the trial court's finding, ignoring all evidence to the contrary. *Dow Chem. Co.*, 46 S.W.3d at 241. Only if there is no evidence to support the finding does the reviewing court examine the entire record "to determine of the contrary proposition is established as a matter of law." *Id.* On the other hand, our factual sufficiency review of the evidence must be conducted in a neutral light.

26

*Altice*, 668 S.W.3d at 410. Stanley, as the party attacking the factual sufficiency of an adverse finding on an issue for which it had the burden of proof at trial, must demonstrate on appeal "that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. The trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony under either standard. *Altice*, 668 S.W.3d at 410.

Given our review of the evidence, and with due deference to the trial court on its credibility determinations, we conclude there was legally and factually sufficient evidence to sustain the trial court's finding that the loan repayment was not a fraudulent transfer.

### b. The Truck

Suggs and Dummit were the only witnesses who testified about this transfer. Their testimony was uncontested. Suggs testified that when gifted, the truck had 289,000 miles on it and was at least eleven years old. He testified the truck was "fully depreciated" and had "zero book value" left on it. Dummit agreed. He testified that the truck was fully depreciated so that there was "zero book value" left on it when gifted to Luna.

### (1) Transfer to an Insider

There was sufficient evidence for the trial court to conclude that Luna was not an insider. There was no testimony regarding the extent of the relationship between

27

Luna and Suggs, other than Suggs' testimony that Luna was one of two DFW Boat employees in 2019 and that Luna had worked for DFW Boats for more than ten years by then.[37] Luna did not testify. And there was no testimony that suggested Luna exercised "control or influence" over Suggs or DFW Boats. This badge weighs against a finding of a fraudulent transfer.

### (2) Control of the Assets After the Transfer

There was no testimony that DFW Boats retained control of the truck after it was gifted to Luna. This badge also weighs against a finding of a fraudulent transfer.

### (3) Date of the Transfers

Suggs testified that the truck was gifted in 2019 after Jill's personal injury judgment was awarded. This badge weighs in favor of a fraudulent transfer.

### (4) Whether the Transfers were Substantially All of DFW Boats' Assets

The trial court found that at the time of Jill's personal injury trial, DFW Boats had approximately $45,000 in its bank account. Given the nominal value of the truck, as discussed below, it is unlikely it constituted substantially all of DFW Boats' assets. This badge weighs against a finding of a fraudulent transfer.

---

[37] *See generally Bank of America, N.A. v. Fulcrum Enters., LLC*, 20 F.Supp.3d 594, 604-05 (S.D. Tex. 2014) ("Generally, an insider is 'an entity whose close relationship with the debtor subjects any transactions made between the debtor and the insider to heavy scrutiny'").

### (5) Value of Consideration/Reasonably Equivalent Value

There was no evidence proffered at trial with respect to the actual value of the truck when it was gifted. According to estimates provided by Appellees during trial, the value of the truck in early 2023 was between $1,930 and $7,504.[38] It is unknown whether the value would have been greater or lesser when it was gifted in 2019, four years before the dates of the estimates proffered by Appellees.[39] *See Janvey*, 487 S.W.3d at 569 ("[B]oth value and reasonable equivalency are determined as of the time of the transaction, not in hindsight."). Moreover, Suggs testified that the truck needed $3,000 to $4,000 worth of repairs, and the trial court found the truck "cost more to repair than it was worth." This badge weighs against a finding that the gift of the truck was a fraudulent transfer.

### (6) Insolvency

---

[38] Appellees provided a J.D. Power estimate for a 2005 truck. According to the estimate, the average price paid for such a truck was $7,504, but the next page gave the estimate for a truck in "rough condition" as $1,930. As noted, some testimony indicated the truck was a 2004 model. A Kelley Blue Book estimate of $3,361, which was proffered at trial was for a 2004 model with 250,000 miles, nearly 40,000 less than the 289,000 miles on the truck when it was gifted. All of the estimates were pulled in March 2023. There was no evidence elicited during trial of the actual value of the truck when it was gifted in 2019.

[39] Appellees argue that after the truck was given to Luna, "used automobile prices skyrocketed due to Covid shortages."

For the reasons set forth in our discussion above, this badge weighs against a finding of a fraudulent transfer, as we have concluded DFW Boats was not insolvent when the transfers occurred.

We conclude that there was legally and factually sufficient evidence to support the trial court's determination that the gift of the truck to Luna was not a fraudulent transfer. Only one of the badges of fraud support Stanley's argument to the contrary.

In sum, we find there was not sufficient indicia of actual intent under Section 24.005(a)(1) to result in a finding of fraud for either transfer. "Evidence of a single 'badge of fraud' does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud." *Id.* at 566–67; *Wohlstein*, 321 S.W.3d at 777 ("Although there is no magic number of factors that must exist, the presence of several 'badges' may support an inference of fraud."). Our appellate courts have held, however, that fraudulent intent was not established when only two or three badges of fraud were present. *See Tex. Custom Pools*, 293 S.W.3d at 314 (holding that evidence of three badges of fraud was legally insufficient to prove actual intent to defraud creditor);[40] *In re 7677 Real St., LLC*, No. 01-16-00683-CV, 2017 WL 4366033, at *5 (Tex. App.—Houston [1st Dist.] Oct. 3, 2017, no pet.) (mem. op.)

---

[40]    *But see Tarrant v. Scarbrough*, No. 12-17-00125-CV, 2017 WL 6350018, at *5 (Tex. App.—Tyler Dec. 13, 2017, no pet.) (mem. op.) (holding that three badges of fraud were sufficient to satisfy TUFTA intent requirement in Section 25.005(b)).

30

(holding two badges of fraud not sufficient to establish actual intent in TUFTA claim).

### 2. Constructive Intent to Defraud

In the absence of actual intent, a fraudulent transfer can be made with constructive intent if the creditor establishes three factors:

(1)     The claim against the debtor arose before the transfer was made;

(2)     The debtor made the transfer without receiving "a reasonably equivalent value" in exchange; and

(3)     The debtor was insolvent when the transfer was made or became insolvent as a result of the transfer.

TEX. BUS. & COM. CODE § 24.006(a). We have already concluded the evidence was legally and factually sufficient to support the trial court's finding that DFW Boats was not insolvent when the transfers were made or rendered insolvent by the transfers. Accordingly, Stanley cannot establish constructive intent to defraud.

### 3. Findings of Fact

Stanley states in a footnote that it challenges ten findings of fact. However, Stanley does not specifically argue the sufficiency of any particular finding. Rather, Stanley states, after arguing the presence of the badges of fraud, "For the foregoing reasons, Appellants conclusively proved there is no evidence to support the following findings of fact: Nos. 18-20, 22, 28, 30, 40-43." Globally attacking findings of fact without providing an explanation of the deficiency in each results in

31

a waiver of the argument as to findings of fact. *See, e.g., Catamount Props. 2018, LLC, v. Guild Mortg. Co., LLC*, No. 05-23-00585-CV, 2025 WL 1285856 (Tex. App.—Dallas May 1, 2025, no pet. h.) (mem. op.) (holding "global[] attack[]" on trial court's findings and facts and conclusions of law, claiming they "were not supported by the trial evidence," but failing to "demonstrate . . . how any specific finding diverged from the evidence presented at trial" resulted in waiver of complaints about findings); *Helitrans Co. v. Rotorcraft Leasing Co., LLC*, No. 01-13-00145-CV, 2015 WL 593310, at *3 (Tex. App.—Houston [1st Dist.] Feb. 12, 2015, no pet.) (mem. op.) (holding appellant failed to adequately brief challenge to findings of fact and conclusions of law when it only stated which findings and conclusions it challenged without providing argument "demonstrating that the trial court's findings of fact were without evidentiary support in the record or that its conclusions of law were erroneous"); *In re Estate of Bessire*, 399 S.W.3d 642, 649 (Tex. App.—Amarillo 2013, pet. denied) ("global[] attack[]" on findings of fact "as lacking in evidence without any explanation of what the deficiency in evidence is" results in findings of fact being binding on appellate court). Thus, we hold Stanley waived its challenge to the trial court's findings of fact.

### 4. Conclusions of Law

Stanley argues two conclusions of law lack support in the trial record. First, Stanley complains of the trial court's Conclusion of Law No. 9, which states:

Plaintiff has failed to prove that any transaction or transfer constitutes a fraudulent conveyance under either Section 24.005(a) or 24.006 of the UCC. More specifically, Plaintiff has failed to establish that any of the transfers complained of were made with actual intent to hinder, delay, or defraud Plaintiff or that DFW Boats failed to receive reasonably equivalent value in exchange for any transfer. Each transfer alleged by Plaintiff to be fraudulent was either not a transfer at all, was made before Plaintiff's claim arose, or was supported by reasonably equivalent value. Plaintiff erroneously conflates her lawsuit with the winding up of DFW Boats, when in fact the former had no causal relationship with the latter. DFW Boats went out of business regardless of the lawsuit, not because of it.

Having already addressed the badges of fraud and having concluded that DFW Boats did not make the transfers with actual or constructive intent to defraud, we uphold the conclusion of law. *See McDonald v. McDonald*, No. 02-22-00446-CV, 2023 WL 3878990, at *2 (Tex. App.—Fort Worth June 8, 2023, no pet.) (explaining that even though appellate court is not bound by trial court's conclusions of law, we uphold them "if the judgment can be sustained on any legal theory supported by the evidence.") (citing *Wyde v. Francesconi*, 566 S.W.3d 890, 894–95 (Tex. App.—Dallas 2018, no pet.)).

Second, Stanley argues there is no support in the record for Conclusion of Law No. 12, which states that Stanley's Section 24.006(b) claim as to the $30,000 payment from DFW Boats to Melamed is barred by limitations. Stanley argues that because the fraudulent transfer claims arise under TUFTA Sections 24.005 or 24.006(a), which carry four–year statutes of limitations, limitations is not a viable defense. *See* TEX. BUS. & COM. CODE § 24.010(3) (enumerating TUFTA limitations

33

provisions). Appellees do not address this argument in their appellate brief.[41] We find this conclusion of law is supported by the evidence, and in any event it is moot, given that Stanley does not appeal a finding under Section 24.006(b).

Finally, we are mindful that, in reviewing the evidence for legal and factually sufficiency, "[i]ntent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Metal Bldg. Components, LP v. Raley*, No. 03-05-00823-CV, 2007 WL 74316, at *9 (Tex. App.—Austin Jan. 10, 2007, no pet.) (mem. op.) (quoting *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986)). Viewing the evidence in the light most favorable to the trial court's judgment and indulging every reasonable inference in the trial court's favor, we conclude Stanley did not demonstrate the evidence established all vital facts in support of its fraudulent transfer allegations. *RSS MSBAM2014C17-TX HAH*, 2024 WL 3995434, at *7. Further, in view of the entire record, we cannot say the trial court's judgment was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

We overrule Stanley's two issues.

---

[41] Stanley further argues that Appellees did not assert a limitations affirmative defense on any ground other than Section 24.006(b) of TUFTA. We do not read Appellees' pleadings so narrowly. The latest answer in the record merely pleads that Stanley's claims are barred "in whole or in part by limitations." The affirmative defense is not limited to claims asserted under Section 24.006(b).

## Conclusion

We affirm the trial court's judgment.

                                        Veronica Rivas-Molloy
                                        Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.